1   MICHAEL F. WRIGHT (SBN 89910)
    10100 Santa Monica Blvd., 23rd Floor
2   Los Angeles, California 90067
    Tel:      (310) 712-6195
3   Fax:      (310) 712-6199
    Email:    mfwrightlaw@gmail.com
4

5   Attorney for Plaintiff
    Contest Promotions, LLC

6

7

8                 **UNITED STATES DISTRICT COURT**

9                **NORTHERN DISTRICT OF CALIFORNIA**

10                  **SAN FRANCISCO DIVISION**

11

12  CONTEST PROMOTIONS, LLC, a California          Case No.
    Limited Liability Company,
13                                                 **COMPLAINT FOR DECLARATORY
                                                   AND INJUNCTIVE RELIEF AND
14                        Plaintiff,               DAMAGES**

15          v.

16  CITY AND COUNTY OF SAN FRANCISCO, a
    municipal corporation,
17

18                        Defendant.

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1    Plaintiff Contest Promotions, LLC ("Contest Promotions" or "Plaintiff") alleges as

2  follows:

3                                    **<u>INTRODUCTION</u>**

4        1.      This is an action to prevent Defendant City and County of San Francisco ("the

5  City") from using the threat of penalties to bully Plaintiff into ceasing operation of twenty (20)

6  onsite Business Signs it currently operates in San Francisco.

7        2.      In Notices of Enforcement (NOEs) served September 21 and October 6, 2016, the

8  City asserts that Plaintiff's signs violate permit, location, size and other provisions of Article 6 of

9  the City Planning Code (Code).  Section 603 of the Code, however, exempts from *all* of Article

10  6's requirements signs that display favored noncommercial and commercial content, such as

11  official public notices, temporary political signs, art murals and emblems of "business firms."

12  Section 603 further exempts speech by favored speakers, such as "public officers," "recognized

13  historical agencies," and government agencies.  Because they are subject to content- and

14  speaker-based exceptions, the restrictions of Article 6, including those the City claims that

15  Plaintiff has violated, are content- and speaker-based.  As such, they are subject to heightened or

16  strict scrutiny under the First Amendment and the Liberty of Speech Clause, article I, section

17  2(a), of the California Constitution.  The restrictions cannot withstand such scrutiny.  They do

18  not directly advance the City's constitutionally substantial interests in sign regulations, *i.e.* safety

19  and aesthetics.  Indeed, the content and speakers section 603 exempts are just as harmful to its

20  interests as those it restricts.

21        3.      In the NOEs, the City further claims that Plaintiff's signs violate the Settlement

22  Agreement of July 14, 2014, that the parties reached in a prior action in this court.  The City

23  claims that the signs violate ¶ 2(a) of the agreement, which requires Plaintiff to submit all

24  necessary permit applications to all city agencies within 270 days of the agreement's effective

25  date.  It also claims that four of Plaintiff's signs are located on business premises that are now

26  vacant, in violation of ¶ 2(d) and (e) of the agreement.  Those provisions require Plaintiff to

27  remove its signs within five (5) days if the on-premises business permanently ceases operation.

28  Apart from whether Plaintiff's signs violate these provisions, the City repudiated and materially

breached the Settlement Agreement on July 29, 2014, when it amended section 602.3 of the Code to redefine the term "Business Sign" so as to exclude Plaintiff's signs and preclude Plaintiff from obtaining permits for its signs.  Under settled contract law, the City's breach excused any obligation by Plaintiff to perform.

4.      Further, section 602.3 violates the Contracts Clauses of the Federal and California Constitutions ("Contracts Clauses").  The amended section 602.3 precludes Plaintiff from obtaining permits for its signs, which would certify that they are legal.  But the Settlement Agreement recognized Plaintiff's signs as legal and established a process for Plaintiff to obtain permits.  The amended section 602.3 thus was a repudiation, and breach of the Settlement Agreement.  That alone was a violation of the Contracts Clauses.  A public entity cannot enact legislation that abrogates its own contracts absent an emergency and other criteria that are not satisfied here.  But even if they do not invalidate section 602.3, the Contracts Clauses preclude the City from using section 602.3 to deny Plaintiff's permits *and* raise it as a defense to a claim for damages.  That would leave Plaintiff with no remedy whatsoever.

5.      The City cynically claims that in ¶ 3 of the Settlement Agreement, Plaintiff agreed that its permit applications would comply with the Code as it existed when the applications were filed.  Under this provision, says the City, it did not breach the Settlement Agreement when it adopted legislation that precluded Plaintiff from obtaining permits.  Courts have roundly rejected this argument as "absurd," and an interpretation that would make the Settlement Agreement illusory.  At a minimum, the City's amendment of section 602.3 entitles Plaintiff to damages for breach of contract and breach of the implied covenant of good faith and fair dealing.

6.      The City further asserts that Plaintiff failed to submit permit applications to certain City agencies in violation of Code provisions not found in Article 6.  Any such filings, however, would have been futile since section 602.3 categorically precludes permitting of Plaintiff's signs.

7.      The constitutionality of section 602.3 is currently at issue in the Ninth Circuit and San Francisco Superior Court.  The outcome of those cases remains in doubt.  Further, the provisions of Article 6 the City claims that Plaintiff has violated – which constitute the bulk of

the City's charges – are highly dubious given section 603's content- and speaker-based exemptions.  The NOEs thus put Plaintiff in a constitutionally intolerable dilemma.  Plaintiff must either comply with the NOEs at the cost of its First Amendment rights and the revenue from its signs or refuse to comply at the risk of prohibitive penalties if its constitutional challenges should ultimately fail.  Under these circumstances, the due process tolling principle of *Ex Parte Young*, 209 U.S. 123 (1908) suspends any liability for noncompliance with the Code until Plaintiff's constitutional claims are finally decided in the court of last resort – including the U.S. Supreme Court.

## NATURE OF THE ACTION

8.      This is a civil action under 42 U.S.C. § 1983.  Plaintiff seeks, under 28 U.S.C. §§ 2201-02, a declaration that sections 602.3, 604, 606, 607.1, 607.2, and any other provisions of Article 6 of the San Francisco Planning Code (Code), on their face and as applied to Plaintiff, violate the First Amendment of the United States Constitution and the Liberty of Speech Clause, article I, section 2(a), of the California Constitution.  Plaintiff also seeks a temporary restraining order (TRO) and a preliminary and permanent injunction against enforcement of the above-described provisions and certain other provisions of the Code outside Article 6 that the City asserts against Plaintiff.  Plaintiff also seeks a judicial declaration that under the constitutional tolling doctrine of *Ex Parte Young* and its progeny, that no penalties or other liability of any kind, civil or criminal, for noncompliance with any of the Code provisions the City seeks to enforce against Plaintiff shall accrue while this action is pending, and until the case is finally decided in the court of last resort.  Plaintiff seeks a judicial declaration of the parties' rights and liabilities under a July 2014 settlement agreement entered in a prior action between them in this Court ("the Settlement Agreement").  Plaintiff further seeks damages on its federal constitutional claims and for the City's breach of the Settlement Agreement and the covenant of good faith and fair dealing implied therein.

1

## JURISDICTION AND VENUE

2   9.   This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331,

3   which confers original jurisdiction on federal district courts over actions arising under the

4   Constitution or laws of the United States.

5   10.   The Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant

6   to 28 U.S.C. § 1367(a).

7   11.   Venue is proper in this district under 28 U.S.C. § 1391 (b)(1) and (2) because the

8   City is located within this district and a substantial part of the events giving rise to Plaintiffs'

9   claims occurred in this district.

10

## INTRADISTRICT ASSIGNMENT

11   12.   Pursuant to Civil Local Rule 3-2(c), this action should be assigned to the San

12   Francisco Division of this Court because a substantial part of the events giving rise to Plaintiffs'

13   claims occurred in San Francisco.

14

## ALLEGATIONS COMMON TO ALL CLAIMS

15

### THE PARTIES

16   13.   Plaintiff is a California Limited Liability Company engaged in the business of

17   promoting in-store contests, which it advertises with onsite signs.

18   14.   Defendant City is a municipal corporation, organized under its Charter and the

19   laws of the State of California.  The City is both a city and a county under the California

20   Constitution with the capacity to sue and be sued.

21

### Plaintiff's Business of Conducting Onsite Contests

22   15.   Plaintiff promotes contests the public may enter by going inside a store and filling

23   out an entry form.  To promote its contests, Plaintiff uses stand-alone signs located on the store

24   premises.  The signs are essential to Plaintiff's business.

25   ### The City's Regulation of Onsite "Business Signs" and Offsite "General Advertising Signs"

26

27   16.   Section 602.3 of the Code, as amended July 29, 2014, defines a business sign as a

28   sign that "directs attention to *the primary* business, commodity, service, industry or other

COMPLAINT                                                                                       4

activity which is sold, offered, or conducted on the premises" where the sign is located.  The "primary" business, etc., is defined as "the use which ***occupies the greatest area*** on the premises upon which the business sign is located, or to which it is affixed."  (Emphasis added.)

17.     The previous version of section 602.3, operative until July 29, 2014, defined a business sign as "***a*** sign which directs attention to a business, commodity, service, industry or other activity which is sold, offered, or conducted, ***other than incidentally***, on the premises upon which such sign is located, or to which it is affixed. . . ."  (Emphasis added.)

18.     The City regulates offsite signs as "general advertising signs" under section 602.7, which defines a general advertising sign as follows:

> A sign, legally erected prior to the effective date of Section 611 of this Code, which directs attention to a business, commodity, industry or other activity which is sold, offered or conducted elsewhere than on the premises upon which [the] sign is located, or to which it is affixed, and which is sold, offered or conducted on such premises only incidentally if at all.

19.     In 2002, the City banned new general advertising signs under Code section 611.

20.     Section 604(a) of the Code provides in relevant part:

> No sign, other than those signs exempted by Section 603 of this Code, shall be erected, placed, replaced, reconstructed or relocated on any property, intensified in illumination or other aspect, or expanded in area or in any dimension except in conformity with Article 6 of this Code.  No such erection, placement, replacement, reconstruction, relocation, intensification, or expansion shall be undertaken without a permit having been duly issued therefor, except as specifically provided otherwise in this Section 604.

21.     Section 603 of the Code exempts a variety of commercial and noncommercial signs from the Code's permit and other sign restrictions.  It provides: "Nothing in this Article 6 [of the Code] shall apply to any of the following signs: . . . ."  Section 603 then lists fifteen (15)

categories of exemptions for favored commercial and noncommercial content and speech by favored speakers:

> (a) Official public notices, and notices posted by public officers in performance of their duties;
>
> (b) Governmental signs for control of traffic and other regulatory purposes, street signs, danger signs, railroad crossing signs, and signs of public service companies indicating danger and aids to service or safety;
>
> (c) Temporary display posters, without independent structural support, in connection with political campaigns and with civic noncommercial health, safety and welfare campaigns, provided that in R districts such posters shall be removed within 60 days following the conclusion of the campaign;
>
> (d) Flags, emblems, insignia and posters of any nation or political subdivision, and temporary displays of a patriotic, religious, charitable or other civic character;
>
> (e) House numbers, whether illuminated or not, "no trespassing," "no parking," and other warning signs;
>
> (f) Commemorative plaques placed by recognized historical agencies;
>
> (g) Signs within a stadium, open-air theater or arena which are designed primarily to be viewed by patrons within such stadium, open-air theater or arena;
>
> (h) Religious symbols attached to buildings if not projecting beyond any street property line or building setback line;
>
> (i) Flags indicating weather conditions, and single flags which are emblems of business firms, enterprises and other organizations;

(j) General advertising signs, not exceeding 24 square feet at certain municipal transit stops, as provided by contract;

(k) Information plaques or signs which identify to the public open space resources, architectural features, creators of artwork, or otherwise provide information required by this Code or by other City agencies, or an identifying sign which directs the general public and/or patrons of a particular establishment to open space or parking resources, provided that such sign shall not project more than three inches from the wall and that its dimensions shall be no greater than 24 inches by 24 inches;

(l) Nonilluminated art murals within the South of Market Mixed Use District and Eastern Neighborhoods Mixed Use Districts, with the exception of the UMU District, if they project no more than 18 inches from the pre-existing surface of a structure;

(m) Two general advertising signs each not exceeding 52 square feet in area on a public service kiosk furnished by contract with the Department of Public Works which contract also provides for the installation and maintenance of automatic public toilets.  Each such public service kiosk shall be divided into three sections, one of which shall provide a public service, such as a newsstand, newsrack, map, public telephone, vending machine, display of public service information, or interactive video terminal;

(n)  Advertising placed on fixed pedestal newsrack units in accordance with Section 184.12 of the Public Works Code;

(o) Any Historic Movie Theater Projecting Sign or Historic Movie Theater Marquee when preserved, rehabilitated, restored, or reconstructed pursuant to Section 188(e).

**The Dispute Over Whether Plaintiff's Signs Are Onsite or Offsite Signs, the First Federal Action and the Settlement Agreement**

22.    Plaintiff has operated its signs in San Francisco since 2004.  In 2007, the City began citing Plaintiff's signs as purportedly illegal general advertising signs.  The City's theory was that some of the prizes awarded in Plaintiff's contests are located offsite, which (the City claimed) made Plaintiff's signs general advertising signs.

23.    Plaintiff was unable to resolve its dispute with the City.  Faced with enormous potential liabilities, Plaintiff brought a federal action in 2009, *Contest Promotions, LLC v. City and County of San Francisco*, U.S.D.C., N.D. Cal. Case No. 3:09-cv-04434-SI (the "First Federal Action"), challenging former sections 602.3 and section 602.7 on First Amendment and other constitutional grounds.  In ruling on preliminary motions, the court reasoned that former section 602.3's "other than incidentally" language was probably unconstitutional.  On November 10, 2010, Plaintiff obtained a preliminary injunction against enforcement of former section 602.3, which the Ninth Circuit affirmed on April 20, 2011.  The City thus faced a substantial prospect of losing the case.

24.    On February 1, 2013, after lengthy negotiations, Plaintiff and the City entered into the Settlement Agreement, which was signed in January 2014.  A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A.  The agreement provided that, after approval by the Board of Supervisors and the Mayor, the City would recognize Plaintiff's signs as legal business signs "for all purposes of the Planning Code, including but not limited to the filing, processing and approval of permits . . ."  As part of the agreement, Plaintiff dismissed the First Federal Action with prejudice and agreed to pay the City $375,000.

25.    The Agreement further recited the following facts concerning Plaintiff's signs:

    . . . Contest Promotions promotes and operates contests in which prospective contest participants are invited to enter various businesses to complete application materials for promotional sweepstakes.  Contest Promotions places signs on the exterior wall of a building located at these businesses.  Such signs typically

COMPLAINT                                                                                    8

consist of a series of posters and a small placard stating that the businesses, commodities, services, industries or other activities which are depicted on these posters, as well as related prizes, are being sold, offered, or conducted on the businesses upon which the signs are located, or to which they are affixed.  The placard also directs people to enter the building for additional information.

26.    Under the Settlement Agreement, the City acknowledged that Plaintiffs' signs were lawful Business Signs.  Although the agreement called for Plaintiff to submit permit applications, the purpose of its doing so was to correct the type of deviations from Code that typically occur in a sign-permitting process, such as size and location adjustments.

27.    The City approved the Settlement Agreement on July 15, 2014 and Plaintiff thereafter made an initial payment of $150,000.  Beginning 30 days thereafter, Plaintiff paid the City $9,375 a month as called for by the agreement.  On August 19, 2016, Plaintiff's final payment cleared the bank.  Plaintiff has now paid the entire $375,000 called for by the Settlement Agreement.  Even as it approved the Settlement Agreement, however, the City was drafting a new section 602.3 that would redefine the term "business sign" to preclude Plaintiff from obtaining any permits for its signs.  The City adopted the new section 602.3, quoted above in paragraph 16, by ordinance dated July 29, 2014.

28.    Pursuant to the Settlement Agreement, Plaintiff submitted 35 permit applications to the City beginning in August and September 2014 at the addresses set forth in Exhibit B hereto.  Beginning in November 2014, the City denied all of Plaintiff's applications, primarily on the grounds that (1) Plaintiff's signs do not comply with the current or former version of section 602.3; and (2) the City purportedly had no obligation under the Settlement Agreement to treat Plaintiff's signs as lawfully erected.  The City denied Plaintiff's administrative appeal orally on January 20, 2016 and in writing on February 2, 2016.

29.    Faced with the City's repudiation of the Settlement Agreement, on January 8, 2015, Plaintiff filed a second action in federal court, entitled *Contest Promotions, LLC v. City and County of San Francisco*, U.S.D.C., N.D. Cal. Case No. CV 15-00093 SI ("the Second

Federal Action").  Plaintiff challenged the validity of the amended section 602.3 under the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Plaintiff also asserted state-law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and promissory estoppel.  By order and judgment of July 28, 2015, the court dismissed Plaintiff's federal claims with prejudice.  The court declined to exercise supplemental jurisdiction over Plaintiff's state law claims and dismissed them under 28 U.S.C. § 1367(c), without prejudice to their being filed in state court.  On August 24, 2015, Plaintiff timely appealed the dismissal of its federal claims to the Ninth Circuit.  The appeal is now fully briefed, apart from updating the court on recent decisions, and is awaiting oral argument.

**The Removed Third Federal Action and Remand of State Law Claims to State Court**

30.     On August 27, 2015, Plaintiff filed its state-law claims in this court.  Plaintiff also alleged causes of action under article I and the Contracts Clauses of the U.S. and California Constitutions.  Based on the federal claim, the City removed the case back to federal court on or about September 23, 2015, *Contest Promotions, LLC v. City and County of San Francisco*, U.S.D.C., N.D. Cal. Case No.CV-1504365 SI ("the Third Federal Action").  The City then moved to dismiss and Plaintiff moved to remand the entire case to state court.  The court granted the City's motion in part, dismissing Plaintiff's federal Contracts Clause claim on grounds of claim preclusion.  The court again declined to exercise supplemental jurisdiction over Plaintiff's state-law claims and remanded them to this court.

**Compliance with California's Government Claims Act**

31.     On September 22, 2014, Contest Promotions submitted a claim to the City pursuant to Government Code sections 945.4 *et seq*.  The City did not respond to Contest Promotions' claim within the requisite 45 days.

32.     On May 13, 2016, Plaintiff again submitted a claim to the City pursuant to Government Code sections 945.4 *et seq*. in connection with the City's denials of Plaintiff's

permit appeals and the new causes of action that arose from that denial.  The City denied this claim on May 23, 2016.

### The Consolidated State Court Proceeding

33.     On February 9, 2016, Plaintiff filed a writ of mandate proceeding in San Francisco Superior Court, in which Plaintiff challenged the City's denial of 35 permit applications Plaintiff submitted to the City pursuant to the Settlement Agreement.  On or about March 21, 2016, the remanded case arrived in superior court.  By order of July 28, 2016, the court consolidated the two cases into a single action, with the writ proceeding as the lead case. The consolidated proceeding is now pending.

### The City's September and October 2016 Notices of Enforcement

34.     Paragraph 10 of the Settlement Agreement provides that if the City contends that any of Plaintiff's signs are not in compliance with the Code, the City must give Plaintiff 30 days' notice of the alleged violation and an opportunity to cure it, and within the 30-day cure period the City may not take any enforcement action.

35.     On September 21, 2016, the City served Plaintiff with twelve (12) Notices of Enforcement (NOEs), purporting to constitute notice under Paragraph 10.  Of these notices, nine (9) asserted violations of Code provisions contained solely within Article 6, *i.e.* sections 604(a) (permit requirement); 604(i) (requiring removal of business signs from vacant property); 606(c) (sign restrictions in residential districts); 607.1 (wall sign size restrictions in certain districts); and 607.2 (wall sign size restrictions in certain other districts).  These notices are for the following addresses: 300 Sanchez St.; 330 Eddy St.; 449 Balboa St.; 716 Columbus Ave.; 930 Columbus Ave.; 1270 Mission St.; 2801 Folsom St.; 2801 Mission St.; and 2950 23rd St.  The notices further asserted that the above-listed signs violate ¶ 2(d) and (e) of the Settlement Agreement, which requires Plaintiff to submit all necessary permit applications within 270 days of the agreement's effective date.

36.     The September 21, 2016 notices asserted that signs at three of the addresses, 300 Sanchez St., 449 Balboa St. and 2801 Folsom St., the businesses – to which the signs related – had moved out.  The City claimed that the signs violated section 604(i) of the Code and ¶ 2 of

the Settlement Agreement, which provides (¶ 2(a)) that Plaintiff's signs must be removed from vacant premises within five (5) business days of their becoming vacant.

37.     Three of the September 21, 2016 notices assert violations of Code provisions not found in Article 6.  One such notice pertains to 353 Kearny Street, which is within a conservation district.  Section 1111 of the Code requires an application for a "Permit to Alter in any Conservation District" to be filed with the Planning Department.  Section 1111.2 provides that, in addition to Planning Department review under Article 6 of the Code, the Historic Preservation Commission (HPC) shall review a sign permit application in a conservation district to determine whether the "proposed location, materials, typeset, size of lettering, means of illumination, method of replacement or the attachment would adversely affect the special architectural, historical or aesthetics significance of the subject building or the Conservation District."  The Notice accuses Plaintiff of not having made these filings.

38.     The second notice is for 360 Hyde St.  It alleges that Plaintiff's sign is too large and prevents the window at the "Serv-Well Market" from occupying 60% of the street frontage, in purported violation of Code section 145.1(c)(6).

39.     The third notice is for 689-699 3rd St.  The alleged violations are that the signs are too big, in purported violation of sections 604(a) and 607(f)(3)(B).  The notice also claims that Plaintiff failed to obtain a Certificate of Appropriateness for the sign under section 1006 of the Code, which requires a permit for a sign placed at a "landmark site or in a historic district."  The notice also asserts Plaintiff violated paragraph 2 of the Settlement Agreement by failing to submit all necessary permit applications within 270 days of the operative date of the agreement.

40.     On October 6, 2016, the City served a second round of NOEs for the following addresses: 172 Golden Gate Ave.; 250 Divisadero St.; 1745 Market St.; 1900 Hayes St.; 2944 24th St.; 3300 Mission St.; 3727 Mission St.; and 4701 Mission St.  All these notices are based on alleged violations of Article 6 of the Code.

41.     All of the NOEs assert that Plaintiff's signs violate sections 171 and 174 of the Code, which are catch-all provisions that require all structures to comply with the Code provisions applicable to the given location.

42.     In the NOEs, the City threatens penalties of $250 a day per sign, as well as enforcement costs and attorney's fees against Plaintiff.  In response to the NOEs, Plaintiff changed the messages on eleven (11) of the cited signs to content exempt from Article 6 of the Code.  These new messages are emblems of the California state flag.  They do not advertise in-store contests and thus do not benefit Plaintiff's storeowner-lessors, nor do they produce revenue to Plaintiff.  Removing contest-related messages from the signs disrupts Plaintiff's contractual relationships and goodwill with the storeowners and deprives Plaintiff of its rights of free speech.

## FIRST CLAIM FOR RELIEF

### (Violation of First Amendment of the United States Constitution)

43.     Plaintiff incorporates paragraphs 1- 42 above as though set forth in full.

44.     The First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech."  The First Amendment protects signs.  The first question in a First Amendment case is whether the challenged restriction is content-based, because government has no power to restrict expression because of its message, its ideas, its subject matter or its content.

45.     A regulation of signs or other speech is content-based if, on its face, it draws distinctions based on the message a speaker conveys.  A speech regulation is content-based if the regulating entity must examine the speech to determine if the message is acceptable.  A speech regulation also is content-based if it generally burdens speech but exempts speech on certain subjects.

46.     Government may also commit a constitutional wrong when it prefers certain speakers over others.  By taking the right to speak from some and giving it to others, or burdening the speech of certain speakers but not others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice.  The Government may not deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration.  The First Amendment protects speech and speaker, and the ideas that flow from each.

47.     Regulations of commercial speech that are content-*or* speaker-based are subject to heightened or strict judicial scrutiny.  Article 6 is both content- *and* speaker-based.  It is content-based because it exempts from its generally applicable restrictions the categories of content set forth in section 603, such as official notices, signs relating to noncommercial health, safety and welfare campaigns, flags and emblems of commercial businesses, religious symbols and art murals.  Article 6 is also speaker-based because it exempts speakers such as governments or government officials and "recognized historical agencies."  The provisions of Article 6 the City seeks to enforce against Plaintiff, including without limitation to sections 602.3, 604, 606, 607.1, and 607.2, thus are content-based and subject to heightened or strict scrutiny, both on their face and as applied to Plaintiff.

48.     The provisions the City seeks to enforce via the NOEs fail either test.  They fail heightened scrutiny because the City cannot meet its "heightened burden" of demonstrating that, in light of the exemptions alleged above, the provisions directly further safety and aesthetics, which are the City's only constitutionally substantial interests in sign regulation.  Nor can the City meet its demanding burden of showing that the provisions it seeks to enforce against Plaintiff are narrowly tailored to further safety and aesthetics.  *A fortiori*, the City cannot justify the provisions of Article 6 under strict scrutiny.  For the above-alleged provisions to satisfy strict scrutiny, the City must show that they further a compelling governmental interest and are narrowly tailored to do so.  Safety and aesthetics are not constitutionally compelling interests and even if they were, the City cannot demonstrate that its selective, content- and speaker-based restrictions directly advance those interests or that they are narrowly tailored to do so.

49.     Nor do the provisions of Article 6 the City seeks to enforce against Plaintiff's signs withstand even intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Civil Serv. Comm.*, 447 U.S. 557, 556 (1980).  *Central Hudson* requires, *inter alia*, that a speech restriction directly advance a substantial governmental interest and that it be narrowly tailored to do so.  The content and speakers Article 6 exempts are no less harmful to safety and aesthetics than the content and speakers it burdens.  The provisions the City seeks to enforce against Plaintiff thus fail even intermediate scrutiny.

50.     Plaintiff faces imminent injury from the City's threatened enforcement.  In the NOEs, the City threatens to serve Notices of Violation (NOVs) on Plaintiff, and to impose penalties of $250 per day for each of Plaintiff's twenty (20) signs the City has cited.  Unless this Court issues a preliminary and permanent injunction prohibiting the City and those acting in concert with it from enforcing the Code sections challenged herein, Plaintiff will suffer irreparable harm, including the loss of its constitutional rights of due process and free speech and loss of its business goodwill.

51.     An actual controversy exists between Plaintiff and the City in that Plaintiff contends that the Code provisions of Article 6 that the City seeks to enforce against Plaintiff are unconstitutional, both on their face and as applied to Plaintiff.  The City denies these contentions.

52.     Plaintiff desires an immediate declaration of its rights arising out of all of the facts and circumstances alleged herein and the concomitant obligations of the City.  Such a declaration is necessary and appropriate at this time inasmuch as Plaintiff is under imminent threat of administrative, civil and even criminal penalties under Code sections 176 and 610 as alleged herein and urgently requires a judicial declaration of its legal rights.

53.     As a direct and proximate result of the City's acts as alleged herein Plaintiff has suffered damages and will continue to suffer damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Violation of Article I, section 2(a) of the California Constitution)

54.     Plaintiff incorporates by reference the allegations in Paragraphs 1-53 above as if set forth verbatim herein.

55.     Plaintiffs' signs are a medium of expression protected by Article I, section 2(a) of the California Constitution ("article I").  Article I provides: "***Every person*** may freely speak, write and publish his or her sentiments on ***all subjects***, being responsible for the abuse of this right.  A law may not restrain or abridge liberty of speech or press."  (Emphasis added.)  The second sentence of article I provides protections equivalent to those of the First Amendment, which provides, "Congress shall make no law ... abridging the freedom of speech, or of the press."  But in the first sentence, article I is altogether different from, and more protective than,

the First Amendment.  Only article I, and not the First Amendment, affirmatively declares as a right that "[e]very person may freely speak, write and publish his or her sentiments on all subjects."  In expressly prohibiting content- ("all subjects") and speaker- ("every person") based speech restrictions, article I thus goes above and beyond the protections of the First Amendment.

56.     Because they are content- and speaker-based, the provisions of Article 6 the City seeks to enforce against Plaintiff's signs are subject to heightened or strict scrutiny under article I.  For the reasons set forth herein, the provisions fail strict, heightened, and even intermediate scrutiny.

57.     In the NOEs, the City threatens to serve Notices of Violation (NOVs) on Plaintiff, and to impose penalties of $250 per day for each of Plaintiff's twenty (20) signs the City has cited.  Unless this Court issues a preliminary and permanent injunction prohibiting the City and those acting in concert with it from enforcing the Code sections challenged herein, Plaintiff will suffer irreparable harm, including the loss of its constitutional rights of due process and free speech.

58.     An actual controversy exists between Plaintiff and the City in that Plaintiff contends that the Code provisions of Article 6 that the City seeks to enforce against Plaintiff are unconstitutional, both on their face and as applied to Plaintiff.  Based on the NOEs, it is clear that the City denies these contentions.

59.     Plaintiff desires an immediate declaration of its rights arising out of all of the facts and circumstances alleged herein and the concomitant obligations of the City.  Such a declaration is necessary at this time because Plaintiff is under threat of penalties due to the presence of its signs as alleged herein and urgently requires a judicial declaration of its legal rights.

### THIRD CLAIM FOR RELIEF

**(Violation of Contracts Clause, Article I, section 10 of the U.S. Constitution)**

60.     Plaintiff incorporates by reference the allegations in Paragraphs 1-59 above as if set forth verbatim herein.

61.     The Contracts Clause, Article I, § 10, of the United States Constitution, provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."  The Contracts

Clause applies to cities. The Contracts Clause prohibits a city from enacting ordinances that substantially impair the city's existing, lawful contracts except under extraordinary circumstances. Section 602.3 substantially impairs the Settlement Agreement in that, among other things, it deprives Plaintiff of the ability to obtain permits, including re-permits. The new ordinance also makes the consideration Plaintiff gave for the Settlement Agreement worthless.

62.     Where, as here, a law substantially impairs a contract to which a public entity is a party, the public entity bears the burden of showing that the impairment is both reasonable and necessary. With respect to reasonableness, the public entity is not free to consider substantial contractual impairments on a par with other policy alternatives. Nor is an impairment reasonable if the problem the public entity seeks to resolve existed at the time it entered into the contract. With respect to necessity, an impairment is not necessary if alternatives less damaging to the contract are available.

63.     The new section 602.3 is neither reasonable nor necessary. It serves no legitimate purpose relating to sign regulation and even if it did, the City was not free to consider impairment of the Settlement Agreement on a par with alternatives that did not impair the agreement. In any event, the problems of sign safety and aesthetics long antedate the Settlement Agreement. Section 602.3 was not necessary because the City could have addressed sign safety and aesthetics equally well in other ways, such as content-neutral restrictions on the location, size and appearance (e.g. illumination) of signs.

64.     The City also seeks to set up section 602.3, in conjunction with ¶ 3 of the Settlement Agreement, as a defense to Plaintiff's claims for breach of the Settlement Agreement. The City thus seeks effectively to condemn Plaintiff's signs, lease agreements and contract rights and to shift the entire cost of the de facto condemnation onto Plaintiff. In so doing, the City seeks substantially to impair the obligations of the Settlement Agreement without justification and in direct violation of the Contracts Clause.

65.     In applying Section 602.3 to Plaintiff, Defendant has acted under color of statute, ordinance, regulation and policy of the municipality.

66.     An actual controversy exists between Plaintiff and Defendant, in that Plaintiff contends and Defendant disputes that the City's amendment to Section 602.3 of the Planning Code is unconstitutional under the Federal Contracts Clause.

67.     An actual controversy exists between Plaintiff and the City in that Plaintiff contends, and the City disputes, that the City may not deny Plaintiff's permit applications on the purported authority of Section 602.3.  Plaintiff contends that it is entitled to damages or alternatively restitution of all consideration it paid or otherwise gave in return for the Settlement Agreement, including without limitation the $375,000 Plaintiff agreed to pay as an inducement to the City to accept the agreement and Plaintiff's rights asserted in the First Federal Action. Plaintiff further contends that even if section 602.3 is not invalid under the Contracts Clause, that provision prohibits the City from raising section 602.3 as a defense to a claim for breach of contract.  The City denies all of Plaintiff's contentions.

68.     Plaintiff desires an immediate declaration of its rights arising out of all of the facts and circumstances alleged herein and the concomitant obligations of the City.  Such declaration is necessary and appropriate at this time inasmuch as Plaintiff is being irreparably injured and will continue to suffer irreparable injury in the form of lost constitutional rights and business goodwill, until a declaration of its rights is made.

69.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages and will continue to suffer damages in an amount to be proven at trial.

70.     Unless the City is enjoined and restrained from enforcing or threatening to enforce Section 602.3 against it, Plaintiff will be irreparably injured.  Plaintiff will be deprived of rights guaranteed under the United States Constitution, will suffer substantial loss of rents, profits and good will, the nature and extent of which will be extremely difficult or impossible to ascertain.  Plaintiff has no adequate remedy at law to prevent or redress the irreparable injury alleged herein.

## FOURTH CLAIM FOR RELIEF

### (Violation of Contracts Clause, Article I section 9, of the California Constitution)

71.     Plaintiff incorporates by reference the allegations in Paragraphs 1-70 above as if set forth verbatim herein.

72.     The California Contracts Clause, Article I, section 9 of the California Constitution, provides: "A bill of attainder, ex post facto law, or law impairing the obligation of contracts may not be passed."  Like its federal counterpart, the California Contracts Clause applies to cities.  The clause prohibits a city from enacting ordinances that substantially impair the city's own obligations under existing, lawful contracts except under extraordinary circumstances.

73.     Section 602.3 substantially impairs Plaintiff's rights and the City's obligations under the Settlement Agreement as alleged herein.  Section 602.3 therefore can be justified only under extraordinary circumstances.  Such circumstances exist under California law only if the ordinance that abrogates the city's pre-existing contractual duties (1) protects basic societal interests; (2) is justified by an emergency; (3) is appropriate for the emergency; and (4) is temporary.  None of these factors is present here.  The new Section 602.3 serves no legitimate purpose relating to sign regulation.  It neither is the result of, nor appropriate to, any emergency and it is not temporary.  Section 602.3 therefore violates the California Contracts Clause.

74.     The City also seeks to set up section 602.3, in conjunction with ¶ 3 of the Settlement Agreement, as a defense to Plaintiff's claims for breach of the Settlement Agreement. The City thus seeks effectively to condemn Plaintiff's signs, lease agreements and contract rights and to shift the entire cost of the de facto condemnation onto Plaintiff.  In so doing, the City seeks substantially to impair the obligations of the Settlement Agreement without justification and in direct violation of the Contracts Clause.

75.     In applying Section 602.3 to Plaintiff, Defendant has acted under color of statute, ordinance, regulation and policy of the municipality.

76.     An actual controversy exists between Plaintiff and Defendant, in that Plaintiff contends and Defendant disputes that the City's amendment to Section 602.3 of the Planning Code is unconstitutional under the California Contracts Clause.

77.     An actual controversy exists between Plaintiff and Defendant in that Plaintiff contends, and Defendant disputes, that the City may not deny Plaintiff's re-permits on the purported authority of Section 602.3 or raise section 602.3 as a defense to a claim for breach of contract.  Plaintiff contends that it is equitably entitled, as an alternative remedy, to restitution of all consideration Plaintiff gave in connection with the agreement.  Plaintiff alleges on information and belief that the City denies all of Plaintiff's contentions.

78.     Plaintiff desires an immediate declaration of its rights arising out of all of the facts and circumstances alleged herein and the concomitant obligations of the City.  Such declaration is necessary and appropriate at this time inasmuch as Plaintiff is being irreparably injured and will continue to suffer irreparable injury in the form of lost constitutional rights and business goodwill, until a declaration of its rights is made.

79.     Unless the City is enjoined and restrained from enforcing or threatening to enforce Section 602.3 against it, Plaintiff will be irreparably injured.  Plaintiff will be deprived of rights guaranteed under the California Constitution, will suffer substantial loss of rents, profits and good will, the nature and extent of which will be extremely difficult or impossible to ascertain.  Plaintiff has no adequate remedy at law to prevent or redress the irreparable injury alleged herein.

## FIFTH CLAIM FOR RELIEF

### (Breach of Contract)

80.     Plaintiff incorporates by reference the allegations in Paragraphs 1-79 above as if set forth verbatim herein.

81.     Plaintiff and the City have a valid, binding contract in the Settlement Agreement, a true and correct copy of which is attached hereto as Exhibit A.  Among other things, the Settlement Agreement provides as follows:

(a)  Plaintiff's signs are onsite signs (first recital);

(b)  Plaintiff's signs are eligible for permits under the criteria then

applicable (¶ 2 (a)-(c)); and

(c)  Plaintiff's signs were lawful signs, in that the City released all

violations, known or unknown (¶ 8).

82.    Plaintiff performed all conditions and covenants owed to the City under the terms of the Settlement Agreement, except for those obligations that have been excused by the conduct of the City.

83.    The City breached the Settlement Agreement in performing the acts described herein.  Among other things, the City repudiated the Settlement Agreement by enacting the amended version of section 602.3, which precludes Plaintiff from obtaining permits for its signs. The City further breached the Settlement Agreement by denying Plaintiff's permit applications. Because the City has erected a threshold barrier to Plaintiff's obtaining permits, Plaintiff cannot cure any noncompliance with other Code provisions, and it is futile for Plaintiff to try to do so.

84.    In the NOEs, the City claims that at four addresses, Plaintiff's signs violate ¶¶ 2(d) and (e) of the Settlement Agreement because the premises are now vacant.  These addresses are 300 Sanchez St., 449 Balboa St., 2801 Folsom St., and 1745 Market St.  Paragraphs 2(d) and (e) require that Plaintiff remove its signs from vacant property within five (5) business days. These parts of the Settlement Agreement, however, are premised on Plaintiff's ability to obtain new permits by complying with the permitting criteria applicable at the time of the Settlement Agreement, which the parties agreed to in February 2013.  As a threshold matter, Plaintiff cannot obtain said permits under Section 602.3, as amended.  In any event, due to the City's repudiation and breach of the Settlement Agreement as alleged herein, Plaintiff's performance under the Settlement Agreement, including ¶¶ 2(d) and (e), is excused.

85.    In the NOEs, the City also asserts that with respect to nine (9) of its signs, Plaintiff has violated ¶ 2(a) of the Settlement Agreement, by allegedly failing to submit the necessary permit applications to all relevant City agencies within 270 days of the effective date of the Settlement Agreement, *i.e.* July 14, 2014.  The City's enactment of the amended section 602.3 on July 29, 2014, however, effectively prevented Plaintiff from obtaining permits for its

COMPLAINT                                                                                                                    21

signs.  The City proved this point by denying all 35 of Plaintiff's permit applications, primarily for failure to comply with the new section 602.3.  Any further permit filings by Plaintiff therefore would have been futile.  As a result of the City's breach of the Settlement Agreement as alleged herein, Plaintiff's performance under the agreement, including ¶ 2(a), is excused.

86.     The NOEs further claim that at three addresses, 353 Kearny St., 360 Hyde St., and 689-99 3rd St., Plaintiff's signs are in violation of Code provisions other than those of Article 6 as alleged above.  With respect to 353 Kearny St. and 689-99 3rd St., the City claims that Plaintiff violated the Code by not submitting permit applications to certain City agencies.  Because of the City's breach of the Settlement Agreement, however, any such submittals would have been futile.  Under section 602.3, Plaintiff could not have gotten a permit even if it had submitted applications to the other agencies.

87.     With respect to 360 Hyde St., under the Settlement Agreement's permitting criteria, it may be possible for Plaintiff to place its sign on the premises so as to maintain the necessary window space.  The City prevented any such adjustments by amending section 602.3 to preclude issuance of a permit for the sign, which constituted a breach of the Settlement Agreement.

88.     As a direct and proximate result of the City's actions, Plaintiff has suffered damages and will continue to suffer damages in an amount to be proven at trial.  Plaintiff has already been forced to change copy on eleven signs to content that produces no revenue to Plaintiff.  Plaintiff will suffer additional damages to the extent it is forced to remove any of its signs or change the copy on additional signs to exempt content.

89.     An actual controversy exists between Plaintiff and the City in that Plaintiff contends that the City repudiated and materially breached the Settlement Agreement by amending section 602.3 into its present form and by denying Plaintiff's permit applications as alleged herein.  Plaintiff contends that as a result of the City's material breach, Plaintiff's performance under the Settlement Agreement was excused as of July 29, 2014, the date the City enacted the amended version of section 602.3.  Plaintiff contends that the City's breach made the additional permit filings for 353 Kearny and 689-99 3rd St. futile, thereby excusing Plaintiff

from any such filings.  Plaintiff contends that to the extent its sign at 360 Hyde St. does not comply with section 145.1(c)(6) of the Code, Plaintiff is unable to achieve compliance because of the City's amendment of section 602.3 in violation of the Settlement Agreement.  Plaintiff further contends that at the addresses where Plaintiff has changed the copy to exempt content, its signs are now exempt from Article 6 of the Code and are not subject to enforcement.  The City denies these contentions.

90.     Plaintiff desires an immediate declaration of its rights arising out of all of the facts and circumstances alleged herein and the concomitant obligations of the City.  Such a declaration is necessary and appropriate at this time inasmuch as Plaintiff is under imminent threat of penalties due to the presence of its signs as alleged herein and urgently requires a judicial declaration of its legal rights.

## SIXTH CLAIM FOR RELIEF

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

91.     Plaintiff incorporates by reference the allegations in Paragraphs 1-90 above as if set forth verbatim herein.

92.     Plaintiff and the City have a valid, binding contract in the Settlement Agreement.

93.     Plaintiff performed all of the conditions and covenants owed to the City under the terms of the written Settlement Agreement, except for those obligations that have been excused by the conduct of the City.

94.     The City acted in bad faith by requiring Plaintiff to re-permit its current inventory under the terms of the Settlement Agreement, and then, just days after the Settlement Agreement became effective, knowingly and intentionally taking action prevented Plaintiff from re-permitting the inventory, thereby preventing Plaintiff from realizing the benefit of its bargain and curing any noncompliance with the Code

95.     As a direct and proximate result of the City's actions, Plaintiff has suffered damages and will continue to suffer damages in an amount to be proven at trial.

### SEVENTH CLAIM FOR RELIEF

**(For Declaratory and Injunctive Relief Tolling the Accrual of Noncompliance Penalties *Pendente Lite* Under Due Process Clause of the Fourteenth Amendment)**

96.     Plaintiff incorporates by reference, as though set forth in full at this place, Paragraphs 1-95 above.

97.     In response to the NOEs, Plaintiff has promptly invoked the process of this Court to defend against the City's allegations that Plaintiff's signs are illegal and to defend against any penalties the City may seek, other liabilities it may try to impose or enforcement measures it may take.  Plaintiff's claims asserted herein are based on legally substantial, good-faith grounds.

98.     The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."  The NOEs force Plaintiff, long before it can obtain a judicial determination of its claims, into a dilemma.  Plaintiff must either (1) comply with the NOEs at the cost of its constitutional rights of free speech and due process, as well as the loss of goodwill and revenue from its signs; or (2) refuse to comply, at the risk of prosecution and severe administrative, civil and even criminal penalties if Plaintiff's challenge to the City's enforcement measures should fail.  A leading calls this "the *Young* dilemma" after *Ex Parte Young*, 209 U.S. 123 (1908), in which the Supreme Court first clearly articulated that having to choose between the above options is irreparable injury.  Douglas Laycock, "The Death of the Irreparable Injury Rule," 103 Harv. L. Rev. 687, 718-719 (1990).

99.     *Young* its progeny, including *U.S. v. Pacific Coast European Conference*, 451 F.2d 712 (9th Cir. 1971), hold that a party who challenges a statute or administrative order in court is constitutionally immune from liability arising from noncompliance with the statute or order while the challenge is pending, provided that the party seeks relief in the courts promptly and on objectively reasonable grounds.  If these criteria are satisfied, the immunity continues until the underlying case is decided in the court of last resort.  Plaintiff meets the criteria for *Young* tolling in that it has promptly invoked the process of this Court and its claims are based on objectively reasonable grounds.  To the extent any Code provisions or other laws purport to

1   impose liability on Plaintiff that accrues while this action is pending, such laws are

2   unconstitutional.

3       100.    Unless this Court issues a preliminary and permanent injunction prohibiting the

4   accrual of any such penalties, and prohibiting the City from seeking to impose any liability on

5   Plaintiff for operating its existing signs while this case is pending, Plaintiff will suffer irreparable

6   harm.  Such harm consists first in having to choose between the two parts of the *Young* dilemma.

7   It further includes the loss of Plaintiff's constitutional rights of due process and free speech to the

8   extent Plaintiff is forced to forego the present use of its signs.  It also includes loss of Plaintiff's

9   constitutional right of contract except where impaired by a statute or administrative order, the

10  validity of which has been determined in the courts.  Plaintiff has no adequate remedy at law

11  because absent injunctive relief, its potential liability will reach prohibitive levels before Plaintiff

12  can obtain a final determination of its case.

13      101.    An actual controversy within this Court's jurisdiction exists between Plaintiff and

14  the City.  Plaintiff contends that all liability arising out of the operation of its signs while this

15  case is pending is suspended and tolled.  The City denies these contentions.  Plaintiff alleges on

16  information and belief that if the City prevails in this case, it will seek administrative, civil

17  and/or criminal penalties against Plaintiff for operating its signs while its administrative and

18  judicial challenges were pending.

19      102.    A judicial declaration of Plaintiff's rights with respect to the accrual of penalties is

20  necessary and appropriate at this time so that the parties may promptly ascertain their respective

21  rights and obligations.  Such a declaration is necessary and appropriate at this time inasmuch as

22  Plaintiff is under threat of penalties due to the presence of its signs as alleged herein and is

23  suffering irreparable loss of its constitutional rights and business goodwill.  Plaintiff therefore

24  urgently requires a judicial declaration of its legal rights.

25

26

27

28

**EIGHTH CLAIM FOR RELIEF**

**(For Declaratory and Injunctive Relief Tolling the Accrual of Noncompliance Penalties**
***Pendente Lite* Under Due Process Clause of the California Constitution)**

103.     Plaintiff incorporates by reference, as though set forth in full at this place, Paragraphs 1 through 102 above.

104.     In response to the NOEs, Plaintiff has promptly invoked process of this Court to defend against the City's allegations that Plaintiff's signs are illegal and to defend against any penalties the City may seek or enforcement measures it may take.  Plaintiff's has asserted legally substantial, good-faith grounds in support of its claims asserted herein.

105.     Article I, section 7(a) of the California Constitution ("the Due Process Clause") provides in relevant part: "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws. . ."  The State Constitution is an independent source of due process rights.  The Due Process Clause of the California Constitution is at least as protective as the Due Process Clause of the Fourteenth Amendment of the United States Constitution and includes all federally protected rights.

106.     The NOEs place Plaintiff in a dilemma that violates due process.  Right now, long before any final determination of Plaintiff's challenge to the City's enforcement measures, Plaintiff must either (1) comply with the NOEs at the cost of its constitutional rights of free speech and the loss of the economic benefits of its signs; or (2) refuse to comply, at the risk of immediate prosecution and severe administrative, civil and even criminal penalties if Plaintiff's challenge to the City's enforcement measures should fail.

107.     The constitutional tolling principle of *Ex Parte Young* and its progeny relieves Plaintiff from this dilemma.  The Due Process Clause and the constitutional right of access to the courts preclude the accrual of noncompliance penalties against Plaintiff until this case is finally resolved in the court of last resort.  Sections 176 and 610 of the Code, and any other laws that impose penalties on Plaintiff that accrue while this action and/or related judicial proceedings are pending to that extent violate Due Process.

COMPLAINT                                                                                                      26

108.    Unless this Court issues a preliminary and permanent injunction prohibiting the accrual of any such penalties, and prohibiting the City from seeking to impose any liability on Plaintiff for operating its existing signs while this case is pending, Plaintiff will suffer irreparable harm.  Such harm includes the loss of Plaintiff's constitutional rights of due process and free speech.  Plaintiff has no adequate remedy at law because absent injunctive relief, its potential liability will reach prohibitive levels before Plaintiff can obtain a final determination of its case.

109.    An actual controversy within this Court's jurisdiction exists between Plaintiff and the City.  Plaintiff contends that all liability arising out of the operation of its signs while this case is pending is suspended and tolled.  The City denies these contentions.  Plaintiff alleges on information and belief that if the City prevails in this case, it will seek administrative, civil and/or criminal penalties against Plaintiff that accrued while Plaintiff's administrative and judicial challenges were pending.

110.    A judicial declaration of Plaintiff's rights with respect to the accrual of penalties is necessary and appropriate at this time so that the parties may promptly ascertain their respective rights and obligations.  Such a declaration is necessary and appropriate at this time inasmuch as Plaintiff is under threat of penalties due to the presence of its signs as alleged herein and urgently requires a judicial declaration of its legal rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1.    For a judicial declaration that the provisions of Article 6 of the Code that the City seeks to enforce against Plaintiff, including sections 602.3, 604, 606, 607.1, and 607.2, on their face and as applied, are void in that they violate the First Amendment of the United States Constitution and the Liberty of Speech Clause of the California Constitution;

2.    For a preliminary and permanent injunction restraining the City and its agents, employees, representatives, successors, and all persons acting in concert with it from attempting to enforce the provisions of Article 6 of the Code, including those referenced in the NOEs, against Plaintiff or any tenant, occupant or owner of property where any of Plaintiff's signs are located, arising out of the operation of Plaintiff's signs;

1        3.      For a judicial declaration that section 602.3 of the Code, on its face and as applied

2   to Plaintiff, is void in that it violates the Contracts Clauses of the United States and California

3   Constitutions; or in the alternative for a judicial declaration that the Contracts Clauses preclude

4   the City from raising section 602.3 or any other provision of the Code as a defense to any claim

5   by Plaintiff for breach of contract or breach of the implied covenant of good faith and fair

6   dealing;

7        4.      For a preliminary and permanent injunction restraining the City and its agents,

8   employees, representatives, successors, and all persons acting in concert with it from attempting

9   to enforce the provisions of Article 6 of the Code referenced in the NOEs against Plaintiff or any

10  tenant, occupant or owner of property where any of Plaintiff's signs are located, arising out of

11  the operation of Plaintiff's signs;

12       5.      For a preliminary and permanent injunction restraining the City and its agents,

13  employees, representatives, successors, and all persons acting in concert with it from attempting

14  to enforce any other provisions of the Code referenced in the NOEs, including sections 145.1,

15  171, 174, 1006, 1111 and 1111.2 against Plaintiff or any tenant, occupant or owner of property

16  where any of Plaintiff's signs are located, arising out of the operation of Plaintiff's signs;

17       6.      For a judicial declaration that (a) the City's enactment of the amended version of

18  section 602.3 of the Code was a repudiation and material breach of the Settlement Agreement;

19  (b) that the amendment of section 602.3 effectively prevents Plaintiff from obtaining a permit for

20  its signs and from curing any Code violations asserted in the NOEs; (c) that the City's breach of

21  the Settlement Agreement as alleged herein excused Plaintiff's performance under the Settlement

22  Agreement; (d) that neither ¶ 3 nor any other provision of the Settlement Agreement permits the

23  City to deny a permit to Plaintiff based on section 602.3 of the Code; and (e) to the extent the

24  City has forced Plaintiff to cease operating its signs as it had prior to issuance of the NOEs, or

25  does so in the future, such conduct constitutes further material breach of the Settlement

26  Agreement;

27       7.      For a judicial declaration that to the extent Plaintiff has changed the content on its

28  signs or has removed any of its signs in response to the NOEs served by the City on or about

COMPLAINT                                                                                    28

1    September 21 and October 6, 2016, or any other enforcement activity by the City, Plaintiff may

2    restore the prior type of content and the signs themselves to the extent any have been removed;

3         8.    For a judicial declaration that under the tolling principle of *Ex Parte Young*,

4    Plaintiff is not liable in any way whatsoever for noncompliance with any Code provision

5    referenced in the NOEs, or any related provisions of the Code, until this action is finally resolved

6    via a final judgment unreviewable by appeal or writ;

7         9.    For a preliminary and permanent injunction prohibiting the City from attempting

8    to impose on Plaintiff any liability whatsoever for noncompliance with any Code provision

9    referenced in the NOEs, or any related provisions of the Code, until this action is finally resolved

10   via a final judgment unreviewable by appeal or writ;

11       10.    For damages in an amount according to proof for violation of Plaintiff's civil

12   rights pursuant to 42 U.S.C. § 1983 as alleged herein;

13       11.    For damages in an amount according to proof for the City's breach of the

14   Settlement Agreement as alleged herein;

15       12.    For reasonable attorney's fees pursuant to ¶ 13 of the Settlement Agreement and

16   42 U.S.C § 1988;

17       13.    For Plaintiff's costs of suit herein; and

18       14.    For such other and further relief as the Court may deem just and proper.

19
20   Dated:  November 10, 2016                    Respectfully submitted,

21
22                                               /s/ Michael F. Wright
                                                 MICHAEL F. WRIGHT
23                                               Attorney for Plaintiff,
                                                 Contest Promotions, LLC
24
25
26
27
28

COMPLAINT                                                                                    29