MICHAEL F. WRIGHT (SBN 89910)
10100 Santa Monica Blvd., 23rd Floor
Los Angeles, California 90067
Tel:      (310) 712-6195
Fax:      (310) 712-6199
Email:   mfwrightlaw@gmail.com

Attorney for Plaintiff
Contest Promotions, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CONTEST PROMOTIONS, LLC, a California Limited Liability Company,<br><br><br>                    Plaintiff,<br><br>          v.v.<br>CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation,<br><br><br>                    Defendant. | Case No.  16-cv-06539-SI<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |

Plaintiff Contest Promotions, LLC ("Contest Promotions" or "Plaintiff") alleges as follows:

## **INTRODUCTION**

1.      This is an action to prevent Defendant City and County of San Francisco ("the City") from using the threat of penalties to bully Plaintiff into ceasing operation of twenty-one (21) onsite Business Signs Plaintiff lawfully operates in San Francisco, thereby depriving Plaintiff of its First Amendment and Due Process rights.

2.      In Notices of Enforcement (NOEs) served September 21 and October 6, 2016 and January 25, 2017, the City asserts that Plaintiff's signs violate permit, location and size restrictions set forth in Planning Code sections 602, 604(a), 604(i), 606, 607.1, 607.2 and 610 ("the Provisions") of the City Planning Code (Code).  All of the Provisions, however, are contained in Article 6 of the Code.  Section 603 of the Code exempts from *all* of Article 6's requirements signs that display noncommercial content.  Because they are subject to content-based exemptions, the Provisions are content-based speech restrictions.   As such, they are subject to heightened or strict scrutiny under the First Amendment.  The Provisions cannot withstand strict, heightened or even intermediate scrutiny because they do not directly advance the City's constitutionally substantial interests in sign regulations, *i.e.* safety and aesthetics, nor are they narrowly tailored to do so.  The noncommercial content section 603 exempts is just as harmful to the City's interests as the commercial content it restricts.

3.      In the NOEs, the City further claims that Plaintiff's signs violate a July 2014 settlement agreement ("the Settlement Agreement") reached in a prior action in this court.  The City claims that the signs violate ¶ 2(a) of the agreement, which requires Plaintiff to submit all necessary permit applications to all city agencies within 270 days of the agreement's effective date.  It also claims that four of Plaintiff's signs are located on business premises that are now vacant, in violation of ¶ 2(d) and (e) of the agreement.  Those provisions require Plaintiff to remove its signs within five (5) days if the on-premises business permanently ceases operation.  Apart from whether Plaintiff violated these provisions, the City repudiated and materially breached the Settlement Agreement.  It did so first by unduly delaying enactment of the

1    ordinance, from approximately February 1, 2013, when the parties agreed on the material terms

2    of the settlement, to July 15, 2014, when it at last enacted an ordinance officially adopting the

3    agreement.  It did so again on July 29, 2014 when it amended section 602.3 of the Code to

4    redefine the term "Business Sign" to exclude Plaintiff's signs and preclude Plaintiff from

5    obtaining permits for its signs.   The City's breach excused any obligation by Plaintiff to

6    perform.  (In November 2016, the City deleted section 602.3 and transferred its definition of

7    "business sign," without change to section 602.  Plaintiff therefore will refer to the current

8    definition as "section 602," although that section contains many other definitions.)

9        4.      The constitutionality of section 602's definition of business sign is currently at

10   issue in the Ninth Circuit and San Francisco Superior Court.  The outcomes in those cases are in

11   doubt.  Further, the constitutionality of the provisions of Article 6 that the City claims Plaintiff

12   has violated – which constitute the bulk of the City's charges – is doubtful because they are

13   content-based.   Plaintiff thus has legally substantial claims against the City's attempt to enforce

14   the Provisions against Plaintiff's signs.

15       5.      The NOEs put Plaintiff in a constitutionally intolerable dilemma.  At a time when

16   Plaintiff cannot know the ultimate outcome of its challenge to the Provisions, it must choose

17   between two alternatives.  Plaintiff must either (a) comply with the NOEs at the cost of its First

18   Amendment rights and the business goodwill from its signs or (b) refuse to comply at the risk of

19   prohibitive penalties if its constitutional challenges should ultimately fail.  Under these

20   circumstances, the due process tolling principle of *Ex Parte Young*, 209 U.S. 123 (1908) and its

21   progeny suspends any liability for noncompliance with the Code until Plaintiff's judicial

22   challenge is finally decided in the courts.

23       6.      Further, the definition of "business sign" in section 602 violates the Contracts

24   Clause, article I, section 9 of the California Constitution ("Contracts Clause").  The Settlement

25   Agreement recites that Plaintiff's signs are legal onsite Business Signs under then-existing law

26   and establishes a process for Plaintiff to obtain permits.  The City is estopped to deny that

27   Plaintiff's signs are legal onsite Business Signs.  Section 602, however, precludes Plaintiff from

28   obtaining permits for its signs, which would certify that the signs are legal.  Section 602.3 thus

1  was a repudiation and breach of the Settlement Agreement.  That alone was a violation of the

2  Contracts Clause.  A public entity may not enact legislation that abrogates its own contracts

3  absent an emergency and other criteria that are not satisfied here.  But even if it does not

4  invalidate section 602 outright, the Contracts Clause precludes the City from using section 602 to

5  deny Plaintiff's permits *and* raising it as a defense to a claim for damages.  That would leave

6  Plaintiff with no remedy whatsoever.

7        7.     The City cynically claims that in ¶ 3 of the Settlement Agreement, Plaintiff agreed

8  that its permit applications would comply with the Code as it existed when the permits were

9  issued.  Under this provision, says the City, it did not breach the Settlement Agreement when it

10  adopted legislation that precluded Plaintiff from obtaining permits.  Courts have rejected this

11  argument as "absurd," and as an interpretation that would make an agreement illusory.  At a

12  minimum, the City's amendment of section 602 entitles Plaintiff to damages for breach of

13  contract and breach of the implied covenant of good faith and fair dealing.

14        8.     The City further asserts in the NOEs that Plaintiff failed to submit permit

15  applications to certain City agencies and placed a sign that takes up too much window space, in

16  violation of Code provisions not found in Article 6.  Any such filings or size adjustments,

17  however, would have been futile since section 602 categorically precludes permitting of

18  Plaintiff's signs.  The court therefore should declare the Provisions unconstitutional, toll the

19  accrual of penalties *pendente lite*, declare that the City has materially breached the Settlement

20  Agreement and award Plaintiff damages according to proof.

21                                  **NATURE OF THE ACTION**

22        9.     This is a civil action under 42 U.S.C. § 1983.  Plaintiff seeks a declaratory

23  judgment under 28 U.S.C. §§ 2201-02 that sections 602, 604, 606, 607.1, 607.2, 610 and any

24  other provisions of Article 6 of the San Francisco Planning Code (Code) on which the City bases

25  the NOEs, violate the First Amendment, on their face and as applied to Plaintiff.  Plaintiff seeks

26  a preliminary and permanent injunction against enforcement of the above-described provisions

27  and certain other provisions of the Code outside Article 6, including sections 145.1, 171, 174 and

28  176, 1006, 1111 and 111.2, which the City asserts against Plaintiff.  Plaintiff seeks a judicial

---

FIRST AMENDED COMPLAINT       3
Case No.  16-cv-06539-SI

declaration that under the constitutional tolling doctrine of *Ex Parte Young* and its progeny, that no penalties or other liability of any kind, civil or criminal, for noncompliance with any of the Code provisions the City seeks to enforce against Plaintiff shall accrue while this action is pending, and until the case is finally decided in the courts.  Plaintiff seeks a judicial declaration of the parties' rights and liabilities under the Settlement Agreement.  Plaintiff further seeks damages on its First Amendment claim and for the City's breach of the Settlement Agreement and its implied covenant of good faith and fair dealing.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, which confers original jurisdiction on federal district courts over actions arising under the Constitution or laws of the United States.

11.     The Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a).

12.     Venue is proper in this district under 28 U.S.C. § 1391 (b)(1) and (2) because the City is located within this district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## INTRADISTRICT ASSIGNMENT

13.     Pursuant to Civil Local Rule 3-2(c), this action should be assigned to the San Francisco Division of this Court because a substantial part of the events giving rise to Plaintiffs' claims occurred in San Francisco.

## ALLEGATIONS COMMON TO ALL CLAIMS

## THE PARTIES

14.     Plaintiff is a California Limited Liability Company engaged in the business of promoting in-store contests, which it advertises with onsite signs.

15.     Defendant City is a municipal corporation, organized under its Charter and the laws of the State of California.  The City is both a city and a county under the California Constitution with the capacity to sue and be sued.

**Plaintiff's Business of Conducting Onsite Contests**

16.     Plaintiff promotes contests the public may enter by going inside a store and filling out an entry form.  To promote its contests, Plaintiff uses stand-alone signs located on the store premises.  The primary messages on Plaintiff's signs depict the prizes contestants can win in Plaintiff's contests.  The signs are essential to Plaintiff's business.

**The City's Regulation of Onsite "Business Signs" and Offsite "General Advertising Signs"**

17.     The previous version of section 602.3, operative until July 29, 2014, defined a business sign as "***a*** sign which directs attention to a business, commodity, service, industry or other activity which is sold, offered, or conducted, ***other than incidentally***, on the premises upon which such sign is located, or to which it is affixed. . . ."  (Emphasis added.)  The former provision permitted a business sign to display virtually any message that related to products, services or activities offered onsite.

18.     As amended on July 29, 2014, section 602.3 (now part of section 602) defines a business sign as a sign that "directs attention to ***the primary*** business, commodity, service, industry or other activity which is sold, offered, or conducted on the premises" where the sign is located.  The "primary" business, etc., is defined as "the use which ***occupies the greatest area*** on the premises upon which the business sign is located, or to which it is affixed."  (Emphasis added.)  The definition further requires that a message relating to the primary use on the premises occupy at least two-thirds of the business sign.  The remaining third (or less) is limited to the "brand name or symbol" of one or more products or services offered onsite.  The current version thus limits the permissible content of a business signs to only certain onsite messages and allocates sign space to those messages based on their content.

19.     The City regulates offsite signs as "general advertising signs" under section 602.7, which defines a general advertising sign as follows:

> A sign, legally erected prior to the effective date of Section 611 of
> this Code, which directs attention to a business, commodity,
> industry or other activity which is sold, offered or conducted
> elsewhere than on the premises upon which [the] sign is located, or

to which it is affixed, and which is sold, offered or conducted on

such premises only incidentally if at all.

20.    In 2002, the City banned new general advertising signs under Code section 611.

21.    Section 604(a) of the Code provides in relevant part:

No sign, other than those signs exempted by Section 603 of this

Code, shall be erected, placed, replaced, reconstructed or relocated

on any property, intensified in illumination or other aspect, or

expanded in area or in any dimension except in conformity with

Article 6 of this Code.  No such erection, placement, replacement,

reconstruction, relocation, intensification, or expansion shall be

undertaken without a permit having been duly issued therefor,

except as specifically provided otherwise in this Section 604.

22.     Most of the Code provisions the City seeks to enforce against Plaintiff's signs are contained in Article 6, sections 601-611, of the Code.  Section 603, however, exempts all noncommercial signs from Article 6.  It provides: "Nothing in this Article 6 shall apply to any of the following signs:  Noncommercial Signs including but not limited to," "official public notices," "governmental signs" and other types of noncommercial content.  Sections 603(c)-(e) exempt commercial General Advertising Signs, *i.e.* offsite commercial signs, located at certain publicly owned transit stops, and news racks located in the public right of way.  Section 603(f) exempts the marquees of certain historic movie theaters from Article 6.

**The Dispute Over Whether Plaintiff's Signs Are Onsite or Offsite Signs,**
**the First Federal Action and the Settlement Agreement**

23.    Plaintiff has operated its signs in San Francisco since 2004.  In 2007, the City began citing Plaintiff's signs as purportedly illegal general advertising signs.  The City's theory was that some of the prizes awarded in Plaintiff's contests are located offsite, which (the City claimed) made Plaintiff's signs general advertising signs.

24.    Plaintiff was unable to resolve its dispute with the City.  Faced with enormous potential liabilities, Plaintiff brought a federal action in 2009, *Contest Promotions, LLC v. City*

*and County of San Francisco*, U.S.D.C., N.D. Cal. Case No. 3:09-cv-04434-SI (the "First Federal Action"), challenging former sections 602.3 and section 602.7 on First Amendment and other constitutional grounds. In ruling on preliminary motions, the court reasoned that former section 602.3's "other than incidentally" language was probably unconstitutional. On November 10, 2010, Plaintiff obtained a preliminary injunction against enforcement of former section 602.3, which the Ninth Circuit affirmed on April 20, 2011. The City thus faced a substantial prospect of losing the case.

25.     On February 1, 2013, after lengthy negotiations, Plaintiff and the City entered into the Settlement Agreement, which was signed in January 2014. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A. The agreement provided that, after approval by the Board of Supervisors and the Mayor, the City would recognize Plaintiff's signs as legal business signs "for all purposes of the Planning Code, including but not limited to the filing, processing and approval of permits . . ." As part of the agreement, Plaintiff dismissed the First Federal Action with prejudice and agreed to pay the City $375,000.

26.     The Agreement further recited the following facts concerning Plaintiff's signs:

> . . . Contest Promotions promotes and operates contests in which prospective contest participants are invited to enter various businesses to complete application materials for promotional sweepstakes. Contest Promotions places signs on the exterior wall of a building located at these businesses. Such signs typically consist of a series of posters and a small placard stating that the businesses, commodities, services, industries or other activities which are depicted on these posters, as well as related prizes, are being sold, offered, or conducted on the businesses upon which the signs are located, or to which they are affixed. The placard also directs people to enter the building for additional information. (Exhibit A, p. 1.)

1  The Settlement Agreement further established a permitting process for Plaintiff's signs.  (Exhibit

2  A, ¶ 2(a)-(f).)  Under section 611, however, only onsite Business Signs could be erected or

3  receive permits.  The above and other provisions of the Settlement Agreement thus estop the City

4  from denying that Plaintiff's signs display onsite (or "on-premises") content.

5      27.    Under the Settlement Agreement, the City acknowledged that Plaintiffs' signs

6  were lawful onsite Business Signs.  Although the agreement called for Plaintiff to submit permit

7  applications, the purpose of its doing so was to correct the type of deviations from Code that

8  typically occur in a sign-permitting process, such as size and location adjustments.  In agreeing

9  to apply for permits for its signs, Plaintiff did not give up any rights under existing permits.

10      28.    The Settlement Agreement provided that it would take effect only upon enactment

11  of an ordinance by the City and approval of that ordinance by the Mayor or Board of

12  Supervisors.  Formal approval by the City thus was a condition precedent to the Settlement

13  Agreement that only the City could satisfy.  The City was obligated to remove the condition by

14  enacting and approving an appropriate ordinance.  The City was under an implied covenant to

15  use reasonable diligence in attempting to enact and approve the necessary legislation.

16      29.    The City did not approve the Settlement Agreement until July 15, 2014, seventeen

17  months after the parties had agreed on all material terms.  This delay was unreasonable.  Plaintiff

18  alleges on information and belief that the delay was intentional and that the City delayed

19  enactment of the approving ordinance to prevent Plaintiff from timely seeking permits.

20      30.    After the City enacted the July 15, 2014 ordinance, Plaintiff made an initial

21  payment of $150,000.  Beginning 30 days thereafter, Plaintiff paid the City $9,375 a month as

22  called for by the agreement.  On August 19, 2016, Plaintiff's final payment cleared the bank.

23  Plaintiff has now paid the entire $375,000 called for by the Settlement Agreement.

24      31.    Even as it approved the Settlement Agreement, the City was drafting a new

25  section 602.3 that would redefine the term "business sign" to preclude Plaintiff from obtaining

26  any permits for its signs.  The City adopted the new section 602.3, quoted above in paragraph 17,

27  by ordinance dated July 29, 2014.

28

32.     Pursuant to the Settlement Agreement, Plaintiff submitted 35 permit applications to the City beginning in August and September 2014 at the addresses set forth in Exhibit B hereto.  Beginning in November 2014, the City denied all of Plaintiff's applications, primarily on the grounds that (1) Plaintiff's signs do not comply with the current or former version of section 602.3; and (2) the City purportedly had no obligation under the Settlement Agreement to treat Plaintiff's signs as lawfully erected.  The City denied Plaintiff's administrative appeal orally on January 20, 2016 and in writing on February 2, 2016.

33.     Faced with the City's repudiation of the Settlement Agreement, on January 8, 2015, Plaintiff filed a second action in federal court, entitled *Contest Promotions, LLC v. City and County of San Francisco*, U.S.D.C., N.D. Cal. Case No. CV 15-00093 SI ("the Second Federal Action").  Plaintiff challenged the validity of the amended section 602.3 under the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Plaintiff also asserted state-law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and promissory estoppel.  By order and judgment of July 28, 2015, the court dismissed Plaintiff's federal claims with prejudice.  The court declined to exercise supplemental jurisdiction over Plaintiff's state law claims and dismissed them under 28 U.S.C. § 1367(c), without prejudice to there being filed in state court.  On August 24, 2015, Plaintiff timely appealed the dismissal of its federal claims to the Ninth Circuit.  The appeal is now fully briefed and awaiting oral argument.

**The Removed Third Federal Action and Remand of State Law Claims to State Court**

34.     On August 27, 2015, Plaintiff filed its state-law claims in this court.  Plaintiff also alleged causes of action under article I and the Contracts Clauses of the U.S. and California Constitutions.  Based on the federal claim, the City removed the case back to federal court on or about September 23, 2015, *Contest Promotions, LLC v. City and County of San Francisco*, U.S.D.C., N.D. Cal. Case No.CV-1504365 SI ("the Third Federal Action").  The City then moved to dismiss and Plaintiff moved to remand the entire case to state court.  The court granted the City's motion in part, dismissing Plaintiff's federal Contracts Clause claim on grounds of

claim preclusion.  The court again declined to exercise supplemental jurisdiction over Plaintiff's state-law claims and remanded them to state court.

### Compliance with California's Government Claims Act

35.      On September 22, 2014, Contest Promotions submitted a claim to the City pursuant to Government Code sections 945.4 *et seq*.  The City did not respond to Contest Promotions' claim within the requisite 45 days.

36.      On May 13, 2016, Plaintiff again submitted a claim to the City pursuant to Government Code sections 945.4 *et seq*. in connection with the City's denials of Plaintiff's permit appeals and the new causes of action that arose from that denial.  The City denied this claim on May 23, 2016.

### The Consolidated State Court Proceeding

37.      On February 9, 2016, Plaintiff filed a writ of mandate proceeding in San Francisco Superior Court, in which Plaintiff challenged the City's denial of 35 permit applications Plaintiff submitted to the City pursuant to the Settlement Agreement.  On or about March 21, 2016, the remanded case arrived in superior court.  By order of July 28, 2016, the court consolidated the two cases into a single action, with the writ proceeding as the lead case. The consolidated proceeding is now pending.

### The City's Notices of Enforcement

38.      Paragraph 10 of the Settlement Agreement provides that if the City contends that any of Plaintiff's signs are not in compliance with the Code, the City must give Plaintiff 30 days' notice of the alleged violation and an opportunity to cure it, and within the 30-day cure period the City may not take any enforcement action.

39.      On September 21, 2016, the City served Plaintiff with twelve (12) Notices of Enforcement (NOEs), purporting to constitute notice under Paragraph 10.  Of these notices, nine (9) asserted violations of Code provisions contained solely within Article 6, *i.e.* sections 604(a) (permit requirement); 604(i) (requiring removal of business signs from vacant property); 606(c) (sign restrictions in residential districts); 607.1 (wall sign size restrictions in certain districts); and 607.2 (wall sign size restrictions in certain other districts).  These notices are for the

1   following addresses: 300 Sanchez St.; 330 Eddy St.; 449 Balboa St.; 716 Columbus Ave.; 930

2   Columbus Ave.; 1270 Mission St.; 2801 Folsom St.; 2801 Mission St.; and 2950 23rd St.  The

3   notices further asserted that the above-listed signs violate ¶ 2(d) and (e) of the Settlement

4   Agreement, which requires Plaintiff to submit all necessary permit applications within 270 days

5   of the agreement's effective date.

6           40.     The September 21, 2016 notices asserted that signs at three of the addresses, 300

7   Sanchez St., 449 Balboa St. and 2801 Folsom St., the businesses – to which the signs related –

8   had moved out.  The City claimed that the signs violated section 604(i) of the Code and ¶ 2 of

9   the Settlement Agreement, which provides (¶ 2(a)) that Plaintiff's signs must be removed from

10  vacant premises within five (5) business days of their becoming vacant.

11          41.     Three of the September 21, 2016 notices assert violations of Code provisions not

12  found in Article 6.  One such notice pertains to 353 Kearny Street, which is within a

13  conservation district.  Section 1111 of the Code requires an application for a "Permit to Alter in

14  any Conservation District" to be filed with the Planning Department.  Section 1111.2 provides

15  that, in addition to Planning Department review under Article 6 of the Code, the Historic

16  Preservation Commission shall review a sign permit application in a conservation district to

17  determine whether the "proposed location, materials, typeset, size of lettering, means of

18  illumination, method of replacement or the attachment would adversely affect the special

19  architectural, historical or aesthetics significance of the subject building or the Conservation

20  District."  The Notice accuses Plaintiff of not having made these filings.

21          42.     The second notice is for 360 Hyde St.  It alleges that Plaintiff's sign is too large

22  and prevents the window at the "Serv-Well Market" from occupying 60% of the street frontage,

23  in purported violation of Code section 145.1(c)(6).

24          43.     The third notice is for 689-699 3rd St.  The alleged violations are that the signs

25  are too big, in purported violation of sections 604(a) and 607(f)(3)(B).  The notice also claims

26  that Plaintiff failed to obtain a Certificate of Appropriateness for the sign under section 1006 of

27  the Code, which requires a permit for a sign placed at a "landmark site or in a historic district."

28

1    The notice also asserts Plaintiff violated paragraph 2 of the Settlement Agreement by failing to

2    submit all necessary permit applications within 270 days of the operative date of the agreement.

3          44.     On October 6, 2016, the City served a second round of NOEs for the following

4    addresses: 172 Golden Gate Ave.; 250 Divisadero St.; 1745 Market St.; 1900 Hayes St.; 2944

5    24th St.; 3300 Mission St.; 3727 Mission St.; and 4701 Mission St.  All these notices are based

6    on alleged violations of Article 6 of the Code.

7          45.     On January 25, 2017, the City served another NOE for 900 Columbus Avenue,

8    which is adjacent to 930 Columbus Avenue, one of the addresses cited in the September 21, 2016

9    NOEs.  In the January 25, 2017 NOE, the City claims that the contest-related sign located on the

10   Comet Cleaners premises is too large and faces in the wrong direction.

11         46.     All of the NOEs assert that Plaintiff's signs violate sections 171 and 174 and 176

12   of the Code, which are catch-all provisions that require all structures to comply with the Code

13   provisions applicable to the given location.  Section 176 authorizes the City to seek

14   administrative, civil and monetary penalties of $700 or more per day, plus imprisonment of up to

15   six months for per violation.  Each's day's operation of a sign in violation of the Code is a

16   separate violation.

17         47.     In the NOEs, the City threatens penalties of $250 a day per sign, as well as

18   enforcement costs and attorney's fees against Plaintiff.  In response to the NOEs, Plaintiff

19   changed the messages on eleven (11) of the cited signs to content exempt from Article 6 of the

20   Code.  These new messages are emblems of the California state flag.  They do not advertise in-

21   store contests and thus do not benefit Plaintiff's storeowner-lessors, nor do they produce revenue

22   to Plaintiff.  Removing contest-related messages from the signs disrupts Plaintiff's contractual

23   relationships and goodwill with the storeowners and deprives Plaintiff of its rights of free speech.

24   Seven of these signs continue to display exempt messages.

25         **<u>FIRST CLAIM FOR RELIEF</u>**

26         **(Violation of First Amendment of the United States Constitution)**

27         48.     Plaintiff incorporates paragraphs 1- 47 above as though set forth in full.

28

49.     The First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech."  The First Amendment protects signs such as Plaintiff, which display, in addition to noncommercial messages, only truthful commercial messages concerning lawful products and services.  The first question in a First Amendment case is whether the challenged restriction is content-based, because government has no power to restrict expression because of its message, its ideas, its subject matter or its content.

50.     A regulation of signs or other speech is content-based if, on its face, it draws distinctions based on the message a speaker conveys.  A speech regulation is content-based if the regulating entity must examine the speech to determine if the message is acceptable.  A speech regulation is content-based if it is subject to content-based exceptions.

51.     Content-based speech regulations of commercial speech are subject to heightened or strict judicial scrutiny.  The Provisions are content-based because section 603 exempts from their restrictions signs that display noncommercial content.  The Provisions thus are content-based and subject to heightened or strict scrutiny, both on their face and as applied to Plaintiff.  In the NOEs, the City also seeks to enforce other Code provisions against Plaintiff, including without limitation sections 145.1, 171, 174 and 176, 1006, 1111 and 1111.2.  To the extent these alleged violations are based on or result from violation of the Provisions, the other provisions are unconstitutional as applied to Plaintiff.

52.     The provisions the City seeks to enforce via the NOEs fail either test.  They fail heightened scrutiny because the City cannot meet a heightened burden of showing that the Provisions' restrictions directly further safety and aesthetics or that they are narrowly tailored to do so.   To satisfy strict scrutiny, the Provisions must be narrowly tailored to further a compelling governmental interest.  Safety and aesthetics are not constitutionally compelling interests and even if they were, the City cannot demonstrate that its selective, content-based restrictions are necessary to advance those interests.

53.     Nor do the provisions of Article 6 the City seeks to enforce against Plaintiff's signs withstand even intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Civil*

*Serv. Comm.*, 447 U.S. 557, 556 (1980). *Central Hudson* requires, *inter alia*, that a speech restriction directly advance a substantial governmental interest and that it be narrowly tailored to do so. The content section 603 exempts is no less harmful to safety and aesthetics than the content it burdens. The provisions the City seeks to enforce against Plaintiff thus fail even intermediate scrutiny.

54.     Plaintiff faces imminent injury from the City's threatened enforcement. In the NOEs, the City threatens to serve Notices of Violation (NOVs) on Plaintiff, and to impose penalties of $250 per day for each of Plaintiff's twenty-one (21) signs the City has cited. Monetary penalties alone under the provisions the City threatens to enforce may exceed $700 per day. Unless this Court issues a preliminary and permanent injunction prohibiting the City and those acting in concert with it from enforcing the Code sections challenged herein, Plaintiff will suffer irreparable harm, including the loss of its constitutional rights of due process and free speech and loss of its business goodwill.

55.     An actual controversy exists between Plaintiff and the City in that Plaintiff contends that the Provisions are unconstitutional, both on their face and as applied to Plaintiff. The City denies these contentions.

56.     Plaintiff desires an immediate declaration of its rights arising out of the facts and circumstances alleged herein and the concomitant obligations of the City. Such a declaration is necessary and appropriate inasmuch as Plaintiff is under imminent threat of administrative, civil and even criminal penalties under Code sections 176 and 610 as alleged herein and urgently requires a judicial declaration of its legal rights.

57.     As a direct and proximate result of the City's acts as alleged herein Plaintiff has suffered damages and will continue to suffer damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

**(For Declaratory and Injunctive Relief Tolling the Accrual of Noncompliance Penalties *Pendente Lite* Under Due Process Clause of the Fourteenth Amendment)**

58.     Plaintiff incorporates paragraphs 1-57 as though set forth in full.

59.     In response to the NOEs, Plaintiff has promptly invoked the process of this Court to defend against the City's allegations that Plaintiff's signs are illegal and to defend against any penalties the City may seek, other liabilities it may try to impose or enforcement measures it may take.  Plaintiff's claims asserted herein are based on legally substantial, good-faith grounds.

60.     The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."  The NOEs force Plaintiff, long before it can obtain a judicial determination of its claims, into a dilemma.  Plaintiff must either (a) comply with the NOEs at the cost of its constitutional rights of free speech and due process, as well as the loss of goodwill and revenue from its signs; or (b) refuse to comply, at the risk of prosecution and severe administrative, civil and even criminal penalties if Plaintiff's challenge to the City's enforcement measures should fail.  A leading commentator calls this situation "the *Young* dilemma" after *Ex Parte Young*, 209 U.S. 123 (1908), in which the Supreme Court first clearly articulated that having to choose between the above options is irreparable injury.  Douglas Laycock, "The Death of the Irreparable Injury Rule," 103 HARV. L. REV. 687, 718-719 (1990).

61.     *Young* its progeny, including *Wadley So. Railway v. Georgia*, 235 U.S. 651 (1915) and *U.S. v. Pacific Coast European Conference*, 451 F.2d 712 (9th Cir. 1971), hold that a party who promptly challenges a statute or administrative order on substantial grounds in court is constitutionally immune from liability arising from noncompliance with the disputed statute or order while the challenge is pending.  If these criteria are satisfied, the immunity continues until the underlying case is decided in the court of last resort.  Plaintiff meets the criteria for *Young* tolling in that it has promptly invoked the process of this Court and its claims are based on objectively reasonable grounds.  To the extent any Code provisions or other laws purport to impose liability on Plaintiff that accrues while this action or any subsequent appeal is pending, such laws are unconstitutional.

62.     Unless this Court issues a preliminary and permanent injunction prohibiting the accrual of any such penalties, and prohibiting the City from seeking to impose any liability on Plaintiff for operating its existing signs while this case is pending, Plaintiff will suffer irreparable

1  harm.  Such harm consists first in having to choose between the two parts of the *Young* dilemma.

2  It further includes the loss of Plaintiff's constitutional rights of due process and free speech to the

3  extent Plaintiff is forced to forego the use of its signs.  It also includes loss of Plaintiff's

4  constitutional right of contract and business goodwill except where impaired by a statute or

5  administrative order that the courts have determined to be valid.  Plaintiff has no adequate

6  remedy at law.  Absent injunctive relief, its potential liability will reach prohibitive levels before

7  Plaintiff can obtain a final determination of its case.

8          63.      An actual controversy within this Court's jurisdiction exists between Plaintiff and

9  the City.  Plaintiff contends that all liability arising out of the operation of its signs while this

10  case is pending is suspended and tolled *pendente lite*.  The City denies these contentions.

11  Plaintiff alleges on information and belief that absent preliminary and injunctive relief against

12  the accrual or enforcement of any such liability, the City will seek administrative, civil and/or

13  criminal penalties against Plaintiff that accrue while its administrative and judicial challenges

14  were pending.

15          64.      A judicial declaration of Plaintiff's rights with respect to the accrual of penalties is

16  necessary and appropriate so that the parties may promptly ascertain their respective rights and

17  obligations.  Such a declaration is necessary and appropriate because Plaintiff is under imminent

18  threat of penalties due to the presence of its signs as alleged herein and is suffering irreparable

19  loss of its constitutional rights and business goodwill.  Plaintiff therefore urgently requires a

20  judicial declaration of its legal rights.

21                              **THIRD CLAIM FOR RELIEF**

22      **(Violation of Contracts Clause, Article I section 9, of the California Constitution)**

23          65.      Plaintiff incorporates paragraphs 1-64 as though set forth in full.

24          66.      The California Contracts Clause, Article I, section 9 of the California

25  Constitution, provides: "A bill of attainder, ex post facto law, or law impairing the obligation of

26  contracts may not be passed."  The California Contracts Clause applies to cities.  The clause

27  prohibits a city from enacting ordinances that substantially impair the city's own obligations

28  under existing, lawful contracts except under extraordinary circumstances.

67.     Section 602's definition of business sign substantially impairs Plaintiff's rights and the City's obligations under the Settlement Agreement.  Among other things, it precludes Plaintiff from obtaining permits for its signs.  Plaintiff's signs display contest-related messages that section 602 excludes, either in their entirety or if the message is of the size displayed on Plaintiff's signs.  Under section 602.3 as it existed at the time the City approved the Settlement Agreement, signs that displayed messages such as Plaintiff's qualified for permits.  The City's new definition effectively made Plaintiff's signs ineligible for permits.  The re-definition substantially impaired the Settlement Agreement because permits were essential to legalizing Plaintiff's signs under the Code.  Under the Contracts Clause, section 602 therefore can be justified only under extraordinary circumstances.  Such circumstances exist under California law only if the ordinance that abrogates the city's pre-existing contractual duties (1) protects basic societal interests; (2) is justified by an emergency; (3) is appropriate for the emergency; and (4) is temporary.  None of these factors is present here.  The new Section definition of business sign serves no legitimate purpose relating to sign regulation.  It neither is the result of, nor appropriate to, any emergency and it is not temporary.  The definition therefore violates the California Contracts Clause.

68.     The City also seeks to set up the new definition in conjunction with ¶ 3 of the Settlement Agreement, as a defense to Plaintiff's claims for breach of the Settlement Agreement. The City thus seeks effectively to condemn Plaintiff's signs, lease agreements and contract rights under the Settlement Agreement and shift the entire cost of the de facto condemnation onto Plaintiff.  In so doing, the City seeks substantially to impair the obligations of the Settlement Agreement without justification and in direct violation of the Contracts Clause.

69.     In applying Section 602 to Plaintiff, Defendant has acted under color of statute, ordinance, regulation and policy of the municipality.

70.     An actual controversy exists between Plaintiff and Defendant, in that Plaintiff contends and Defendant disputes that the City's amendment to Section 602 of the Planning Code is unconstitutional and void under the California Contracts Clause.

71.     An actual controversy exists between Plaintiff and the City in that Plaintiff contends that the City may not deny Plaintiff's permits on the purported authority of section 602 or raise it as a defense to a claim for breach of contract.  Plaintiff contends that it is equitably entitled, as an alternative remedy, to restitution of all consideration Plaintiff gave pursuant to the agreement, including without limitation the $375,0000 and the litigation rights Plaintiff gave as consideration.  Plaintiff further contends that it is entitled to a declaratory judgment that the City materially breached the Settlement Agreement by improperly delaying approval of the agreement and enacting the July 29, 2014 version of section 602.3.  Plaintiff alleges on information and belief that the City denies all of Plaintiff's contentions.

72.     Plaintiff desires an immediate declaration of its rights arising out of the facts and circumstances alleged herein and the concomitant obligations of the City.  Such declaration is necessary and appropriate inasmuch as Plaintiff is being irreparably injured and will continue to suffer irreparable injury in the form of lost constitutional rights and business goodwill, until the court issues a declaratory judgment consistent with Plaintiff's contentions alleged above.

73.     Unless the City is enjoined and restrained from enforcing or threatening to enforce Section 602 against it, Plaintiff will be irreparably injured.  Plaintiff will be deprived of rights guaranteed under the California Constitution, will suffer substantial loss of rents, profits and good will, the nature and extent of which will be extremely difficult or impossible to ascertain.  Plaintiff has no adequate remedy at law to prevent or redress the irreparable injury alleged herein.

## FOURTH CLAIM FOR RELIEF

### (Breach of Contract)

74.     Plaintiff incorporates paragraphs 1-73 above as though set forth in full.

75.     Plaintiff and the City have a valid, binding contract in the Settlement Agreement, a true and correct copy of which is attached hereto as Exhibit A.  Among other things, the Settlement Agreement provides as follows:

(a)  Plaintiff's signs are onsite signs (first recital) and permitting

provisions (¶¶ 2-6);

1     (b)  Plaintiff's signs are eligible for permits under the criteria then

2     applicable (¶ 2 (a)-(c)); and

3     (c)  Plaintiff's signs are lawful signs, in that the City released all

4     violations, known or unknown (¶ 8).

5     (d)  If Plaintiff submitted permit applications for signs that conformed to then-

6     existing City law, the City would issue permits for the signs (¶¶ 1, 2(c).)

7    76.  Plaintiff performed all conditions and covenants owed to the City under the terms

8 of the Settlement Agreement, except for those obligations that have been excused by the conduct

9 of the City.

10   77.  The City breached the Settlement Agreement in performing the acts described

11 herein.  Among other things, the City failed to exercise due diligence in approving the Settlement

12 Agreement and delayed in approving it for 17 months and repudiated the Settlement Agreement

13 by enacting the amended version of section 602.3, which precludes Plaintiff from obtaining

14 permits for its signs.  The City further breached the Settlement Agreement by denying Plaintiff's

15 permit applications.  Because the City has erected a threshold barrier to Plaintiff's obtaining

16 permits, Plaintiff cannot cure any noncompliance with other Code provisions such as those

17 relating to size and location, and because of section 602, it is futile for Plaintiff to try to do so.

18   78.  In the NOEs, the City claims that at four addresses, Plaintiff's signs violate ¶¶

19 2(d) and (e) of the Settlement Agreement because the premises are now vacant.  These addresses

20 are 300 Sanchez St., 449 Balboa St., 2801 Folsom St., and 1745 Market St.  Paragraphs 2(d) and

21 (e) require that Plaintiff remove its signs from vacant property within five (5) business days.

22 These parts of the Settlement Agreement, however, are premised on Plaintiff's ability to obtain

23 new permits by complying with the permitting criteria applicable at the time of the Settlement

24 Agreement, which the parties agreed to in February 2013.  As a threshold matter, Plaintiff cannot

25 obtain said permits under section 602.  Further, due to the City's repudiation and breach of the

26 Settlement Agreement as alleged herein, Plaintiff's performance under the Settlement

27 Agreement, including ¶¶ 2(d) and (e), is excused.

28

79.     In the NOEs, the City also asserts that with respect to nine (9) of its signs, Plaintiff has violated ¶ 2(a) of the Settlement Agreement, by allegedly failing to submit the necessary permit applications to all relevant City agencies within 270 days of the effective date of the Settlement Agreement, *i.e.* July 15, 2014.  The City's enactment of the amended section 602.3 on July 29, 2014, however, effectively prevented Plaintiff from obtaining permits for its signs.  The City proved this point by denying all 35 of Plaintiff's permit applications, primarily for failure to comply with the new section 602.  Any further permit filings by Plaintiff therefore would have been futile.  As a result of the City's breach of the Settlement Agreement as alleged herein, Plaintiff's performance under the agreement, including ¶ 2(a), is excused.

80.     The NOEs further claim that at three addresses, 353 Kearny St., 360 Hyde St., and 689-99 3rd St., Plaintiff's signs are in violation of Code provisions other than those of Article 6 as alleged above.  With respect to 353 Kearny St. and 689-99 3rd St., the City claims that Plaintiff violated the Code by not submitting permit applications to certain City agencies.  Because of the City's breach of the Settlement Agreement, however, any such submittals would have been futile.  Under section 602, Plaintiff could not have gotten a permit even if it had submitted applications to the other agencies.

81.     With respect to 360 Hyde St., under the Settlement Agreement's permitting criteria, it may be possible for Plaintiff to place its sign on the premises so as to maintain the necessary window space.  The City prevented any such adjustments by amending section 602.3 to preclude issuance of a permit for the sign even if its size were reduced, which constituted a breach of the Settlement Agreement.

82.     As a direct and proximate result of the City's actions, Plaintiff has suffered damages and will continue to suffer damages in an amount to be proven at trial.  Plaintiff was forced to change the copy on eleven signs to content exempt from Article 6 that produces no revenue or business goodwill to Plaintiff.  This exempt content remains on seven of Plaintiff's signs.  Plaintiff will suffer additional damages to the extent it is forced to maintain exempt copy on its signs, remove any of its signs or change the copy on additional signs to exempt content.

83.     An actual controversy exists between Plaintiff and the City in that Plaintiff contends that the City repudiated and materially breached the Settlement Agreement by unduly delaying approval of the Settlement Agreement and by amending section 602.3 into its present form and by denying Plaintiff's permit applications as alleged herein.  Plaintiff contends that as a result of the City's material breach, Plaintiff's performance under the Settlement Agreement was excused as of July 29, 2014, at the latest, the date the City enacted the amended version of section 602.3.  Plaintiff contends that the City's breach made the additional permit filings for 353 Kearny and 689-99 3rd St. futile, thereby excusing Plaintiff from any such filings.  Plaintiff contends that to the extent its sign at 360 Hyde St. does not comply with section 145.1(c)(6) of the Code, Plaintiff is unable to achieve compliance because of the City's amendment of section 602 in violation of the Settlement Agreement.  Plaintiff further contends that at the addresses where Plaintiff has changed the copy to exempt content, its signs are now exempt from Article 6 of the Code and are not subject to enforcement.  The City denies these contentions.

84.     Plaintiff desires an immediate declaration of its rights arising out of all the facts and circumstances alleged herein and the concomitant obligations of the City.  Such a declaration is necessary and appropriate at this time inasmuch as Plaintiff is under imminent threat of penalties due to the presence of its signs as alleged herein and urgently requires a judicial declaration of its legal rights.

## FIFTH CLAIM FOR RELIEF

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

85.     Plaintiff incorporates paragraphs 1-84 as though set forth in full.

86.     Plaintiff and the City have a valid, binding contract in the Settlement Agreement.

87.     Plaintiff performed all of the conditions and covenants owed to the City under the terms of the written Settlement Agreement, except for those obligations that have been excused by the conduct of the City.

88.     The City acted in bad faith by offering Plaintiff the opportunity to obtain permits for its current inventory under the terms of the Settlement Agreement, which would have resolved any doubt as to the legality of the signs, and then unduly delaying approval of the

1  Settlement Agreement for 17 months.  The City further acted in bad faith by enacting the

2  amended version of section 602.3 just days after the Settlement Agreement became effective,

3  which prevented Plaintiff from obtaining any permits.  The City thereby prevented Plaintiff from

4  realizing the benefit of its bargain and curing any noncompliance with the Code with respect to

5  matters such as size and location of Plaintiff's signs.  The City's conduct as alleged herein was

6  deliberate, knowing and intentional.

7       89.     As a direct and proximate result of the City's actions, Plaintiff has suffered

8  damages and will continue to suffer damages in an amount to be proven at trial.

9                                 **PRAYER FOR RELIEF**

10      WHEREFORE, Plaintiff prays for the following relief:

11      1.      For a judicial declaration that the provisions of Article 6 of the Code that the City

12  seeks to enforce against Plaintiff, including sections 602, 604, 606, 607.1, 607.2 and 610 ("the

13  Provisions"), on their face and as applied, are void in that they violate the First Amendment of

14  the United States Constitution, and that any other Code provisions the City seeks to enforce

15  against Plaintiff are unconstitutional as applied to Plaintiff to the extent violations of those

16  provisions is based on or results from an underlying violation of the Provisions;

17      2.      For a preliminary and permanent injunction restraining the City and its agents,

18  employees, representatives, successors, and all persons acting in concert with it from attempting

19  to enforce the Provisions, or any alleged violations of the Code predicated on violation of the

20  Provisions, including any alleged violations of sections 145.1, 171, 174, 176, 1006, 1111 or

21  1111.2, against Plaintiff or any tenant, occupant or owner of property where any of Plaintiff's

22  signs are located, arising out of the operation of Plaintiff's signs;

23      3.      For a judicial declaration that under the tolling principle of *Ex Parte Young* and its

24  progeny, Plaintiff is not liable in any way whatsoever for noncompliance with any Code

25  provision referenced in the NOEs, or any related provisions of the Code, until this action is

26  finally resolved via a final judgment unreviewable by appeal or writ;

27      4.      For a preliminary and permanent injunction under the tolling principle of *Ex Parte*

28  *Young* and its progeny, prohibiting the City from attempting to impose on Plaintiff any liability

1   whatsoever for noncompliance with any Code provision referenced in the NOEs, or any related

2   provisions of the Code, until this action is finally resolved via a final judgment unreviewable by

3   appeal or writ;

4        5.     For a judicial declaration that section 602 of the Code, on its face and as applied

5   to Plaintiff, is void in that it violates the Contracts Clause of the California Constitution

6   ("Contracts Clause"); or in the alternative for a judicial declaration that the Contracts Clause

7   precludes the City from raising section 602 or any other provision of the Code as a defense to

8   any claim by Plaintiff for breach of the Settlement Agreement, including breach of the implied

9   covenant of good faith and fair dealing;

10        6.     For a preliminary and permanent injunction under the Contracts Clause,

11   prohibiting the City from attempting to impose on Plaintiff any liability whatsoever for

12   noncompliance with any Code provision referenced in the NOEs, or any related provisions of the

13   Code, until this action is finally resolved via a final, unreviewable judgment;

14        7.     For a judicial declaration that (a) the City's 17-month delay in approving the

15   Settlement Agreement constituted a material breach of the agreement; (b) the City's enactment

16   of the amended version of section 602.3 of the Code was a repudiation and material breach of the

17   Settlement Agreement; (c) the amendment of section 602.3 effectively prevents Plaintiff from

18   obtaining permits for its signs and from curing any Code violations asserted in the NOEs, which

19   constitutes a material breach of the Settlement Agreement; (d) the City's breach of the

20   Settlement Agreement as alleged herein excused Plaintiff's performance, including without

21   limitation performance of the obligations to remove its signs from vacant premises within five

22   days, to submit permit applications within 270 days of the effective date of the Settlement

23   Agreement and to pay the City $375,000 or any other amount; (e) neither ¶ 3 nor any other

24   provision of the Settlement Agreement permits the City to deny a permit to Plaintiff based on

25   section 602; and (f) to the extent the City has forced Plaintiff to cease operating its signs as it had

26   prior to issuance of the NOEs, or does so in the future, such conduct constitutes further material

27   breach of the Settlement Agreement;

28

8.      For a judicial declaration that to the extent Plaintiff has changed the content on its signs or has removed any of its signs in response to the NOEs served by the City on or about September 21, October 6, 2016 and January 25, 2017, or any other enforcement activity by the City, Plaintiff may restore the prior type of content and the signs themselves to the extent any have been removed;

9.      For damages in an amount according to proof for violation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983 as alleged herein;

10.     For damages in an amount according to proof for the City's breach of the Settlement Agreement, including the covenant of good faith and fair dealing implied in the agreement, as alleged herein;

11.     For reasonable attorney's fees, pursuant to ¶ 13 of the Settlement Agreement and 42 U.S.C § 1988;

12.     For Plaintiff's costs of suit herein; and

13.     For such other and further relief as the Court may deem just and proper.

Dated:  February 3, 2017                                Respectfully submitted,


                                                        /s/ Michael F. Wright_____
                                                        MICHAEL F. WRIGHT
                                                        Attorney for Plaintiff,
                                                        Contest Promotions, LLC

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement and Mutual General Release (the **"Settlement Agreement"**) is made and entered into as of the Operative Date by and between Contest Promotions, LLC, a California limited liability company (**"Contest Promotions"**) and the City and County of San Francisco, a chartered city and county of the State of California (the **"City"**).

Contest Promotions and the City are sometimes collectively referred to as **"Parties,"** and each is sometimes individually referred to as a **"Party."** This Settlement Agreement is intended by the Parties hereto to settle and extinguish the obligations, disputes and differences as hereinafter set forth.

## RECITALS

**WHEREAS** Contest Promotions promotes and operates contests in which prospective contest participants are invited to enter various businesses to complete application materials for promotional sweepstakes. Contest Promotions places signs on the exterior wall of a building located at these businesses. Such signs typically consist of a series of posters and a small placard stating that the businesses, commodities, services, industries or other activities which are depicted on these posters, as well as related prizes, are being sold, offered, or conducted on the businesses upon which the signs are located, or to which they are affixed. The placard also directs people to enter the building for additional information;

**WHEREAS** Contest Promotions has previously obtained permits under the City Planning and Building Codes for some of the signs it has erected in the City;

**WHEREAS** the City has issued various Notices of Violation for signs purportedly owned or erected by Contest Promotions, including signs erected at the following locations within the City: 1350 Howard Street; 5050 Mission Street; 2146 Mission Street; 1270 Mission Street; 1124 Harrison Street; 353 Kearny Street; 322 Eddy Street; 6583 6th Street; 1745 Market Street; 1101 Oak Street; 500 Grant Avenue; 2081 Mission Street; 2011 Folsom Street/1799 16th Street 2801 Folsom Street/3085 24th Street; 2801 22nd Street; 2950 23rd Street; 2944 24th Street; 4701 Mission Street; 3727/3729 Mission Street; 360 Hyde Street; 172 Golden Gate Avenue; 6199 3rd Street; 689/699 3rd Street; 1900 Hayes Street; 900 Columbus Avenue; 716 Columbus Avenue; 2200 Lane Street; 915 Folsom Street; 250 Divisadero Street; 376 Castro Street; 3300 Mission Street / 3308 Mission Street; 300 Sanchez Street / 3506 16th Street; 2847 24th Street; 237 Eddy Street; 2601 Folsom Street; 3084 24th Street; 1850 Cesar Chavez Street; 160 Pierce Street; 685 Geary Street; and 2332 Lombard Street (collectively, the **"NOVs"**);

**WHEREAS** the NOVs state that the signs located at the identified locations were erected in violation of Article 6 of the Planning Code;

**WHEREAS** on October 31, 2008, the City and Contest Promotions entered into a stay agreement (the **"Stay Agreement"**), effective October 21, 2008, staying the enforcement of certain NOVs;

**WHEREAS** Contest Promotions filed a Request for Reconsideration of the Notice of Violation issued in respect to the sign erected by Contest Promotions at 1350 Howard Street,

EXHIBIT A

which Request was denied in a written decision by the Administrative Law Judge dated February 12, 2010 (the "**ALJ Proceedings**").  On February 12, 2010, the ALJ issued his decision finding that Contest Promotions' sign was an illegal off-site advertising sign.  Contest Promotions did not seek judicial review of the ALJ's decision;

**WHEREAS** on September 2, 2009, Contest Promotions filed a lawsuit against the City in the Federal District Court for the Northern District of California entitled, *Contest Promotions, LLC v. City and County of San Francisco*, Case No. CV 09-4434 SI (the "**Lawsuit**");

**WHEREAS** on November 12, 2010, the Court in the above-entitled action issued an Order in connection with Contest Promotions' Motion for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction requiring the Parties to continue to abide by the Stay Agreement until the Lawsuit is resolved (the "**Order**"), which Order was affirmed by the United States Court of Appeals for the Ninth Circuit on appeal on April 27, 2011;

**WHEREAS** the Parties now desire to settle their issues related to the NOVs, the Lawsuit and the Order, and thereby extinguish their differences, disputes and claims and exchange mutual releases as set forth herein.

**NOW, THEREFORE**, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## DEFINITIONS

The following definitions shall apply to the following terms when used in this Settlement Agreement:

**Business Sign**:  A sign that meets the definition of a Business Sign as set forth in Section 602.3 of the City's Planning Code.

**Category A Sign**:  A Business Sign that directs attention to the businesses, commodities, services, industries or other activities which are sold, offered or conducted on the premises upon which such sign is located, or to which it is affixed.  If multiple businesses, commodities, services, industries or other activities are depicted on such Business Sign, to be deemed a Category A Sign, each such activity must be offered on the premises upon which the Business Sign is located, or to which it is affixed.

**Category B Sign**:  A Business Sign that directs attention to businesses, commodities, services, industries or other activities for each of which one or more Related Prizes are offered in a Sweepstakes conducted on the premises.  If multiple businesses, commodities, services, industries or other activities are depicted on such Business Sign, to be deemed a Category B Sign, each such activity must have a Related Prize in the Sweepstakes conducted on the premises.

Without limiting the foregoing, this definition includes the following, if the awarded prize in each Sweepstakes taking place at a particular sign location corresponds to the posted sign at each premises:

00893354                              EXHIBIT A

| Business Sign Category | Businesses, Commodities, Services, Industries or Other Activities Depicted on Business Sign | Related Prize |
|---|---|---|
| Entertainment | First-run movies | Movie passes capable of being redeemed to see the movie depicted on the sign. |
| Entertainment | Movies available on DVD or other electronic format | DVD or other electronic format of the movie depicted on the sign. |
| Entertainment | Television | DVD or other electronic format containing episodes of the television series depicted on the sign. |
| Entertainment | Recorded music | CD or other electronic format of the recorded music depicted on the sign. |
| Entertainment | Live music | Tickets to the live event. |
| Entertainment | Theater/Events | Tickets to the event. |
| Entertainment | Video games | The video game depicted on the sign. |
| Consumer goods | Tangible good intended for consumption by the mass market. To the extent an item depicted on the sign can be classified into another category in addition to the Consumer Goods category, the intent is that the sign shall be categorized into the more specific category, and only into the Consumer Goods category where no more specific category applies | The item depicted on the sign. |
| Electronics | Electronic devices. | The item depicted on the sign, or an item incorporating the item depicted on the sign. |

EXHIBIT A

| Business Sign Category | Businesses, Commodities, Services, Industries or Other Activities Depicted on Business Sign | Related Prize |
|---|---|---|
| Internet | Internet websites. Signs in which the main message is to direct the viewer to an Internet website; distinguished from a sign that directs attention to a website, but only secondarily to the main message of the sign. | Gift certificate redeemable on the website depicted on the sign |
| Apparel/Clothing | Apparel/Clothing | The item(s) depicted on the sign or a gift certificate capable of being redeemed for the item depicted on the sign. |
| Food and Beverage | Food and Beverage | The item depicted on the sign or a gift certificate capable of being redeemed for the item depicted on the sign. |
| Automotive | Automotive-related products and services. | The product depicted on the sign or, if a service, a gift certificate redeemable for the services depicted on the sign. |
| Health and Healthcare | Healthcare-related products | The item depicted on the sign, a gift card redeemable at a major retailer where such items can be purchased, or a gift card from the retailer depicted on the sign. |
| Travel and hospitality | Travel-related products and services | Gift certificate redeemable for products or services from the provider depicted on the sign. |
| Restaurants | Restaurant | Gift certificate redeemable at the restaurant depicted on the sign. |

EXHIBIT A

00893354

**Erect, to**:  To construct, erect, install, locate, or place.

**Existing Inventory**:  Signs erected by Contest Promotions within the City prior to the execution of this Settlement Agreement as follows:

| Street Address | Block/Lot |
|---|---|
| 3rd Street, 6199 | 4940/023 |
| 3rd Street, 699 | 3788/014 |
| 6th Street, 65 | 3704/026 |
| 8th Street, 397 | 3755/137 |
| 16th Street, 2799 | 3572/019 |
| 22nd Street, 2801 | 4149/001 |
| 23rd Street, 2950 | 4148/013A |
| 24th Street, 2847 | 4267/030 |
| 24th Street, 2948 | 4207/020 |
| 24th Street, 3085 | 6521/040 |
| Balboa Street, 447-449 | 1639/046 |
| Castro Street, 376 | 2623/006 |
| Columbus Avenue, 716 | 0090/027 |
| Columbus Avenue, 900 | 0065/013 |
| Columbus Avenue, 930 | 0065/012 |
| Divisadero Street, 250 | 1238/021 |
| Eddy Street, 326 | 0333/007 |
| Ellis Street, 595 | 0334/021 |
| Folsom Street, 2801 | 6521/040 |
| Folsom Street, 917 | 3753/145 |
| Golden Gate Avenue, 172 | 0344/005 |
| Grant Street, 500 | 0258/012 |
| Haight Street, 901 | 1240/001 |
| Harrison Street, 1122 | 3755/021 |
| Hayes Street, 1900 | 1195/002D |
| Hayes Street, 698 | 0806/018 |
| Kearny Street, 359 | 0270/001 |
| Lane Street, 2200 | 5414/028 |
| Market Street, 1745-1755 | 3503/003 |
| Mission Street, 1270 | 3701/021 |
| Mission Street, 2097 | 3570/020 |
| Mission Street, 3300 | 6635/001 |
| Mission Street, 3729 | 5719/002 |
| Mission Street, 4701 | 6084/033 |
| Mission Street, 5050 | 6969/011 |
| Oak Street, 1101 | 1218/001 |
| Sanchez Street, 300 | 3564/107 |

**General Advertising Sign**:  A sign that meets the definition of a General Advertising Sign as set forth in Section 602.7 of the Planning Code.

**Operative Date**:  The date on which the Mayor approves the ordinance authorizing the settlement of this litigation.  If the Mayor fails to approve or to disapprove the ordinance authorizing the settlement of this litigation, then this Agreement will become operative at the expiration of the tenth day after such ordinance is delivered to the Mayor's Office for consideration.  If, however, the Mayor disapproves the ordinance authorizing the settlement of

00893354

EXHIBIT A

this litigation, then this Settlement Agreement will not become operative unless, within 30 days after the Mayor's disapproval, not less than two-thirds of the Board of Supervisors shall vote in favor of such ordinance.

**Planning Code**:   The City's Planning Code, which is a portion of the San Francisco Municipal Code.

**Planning Department**:  The City's Planning Department, as identified under the Charter of the City and County of San Francisco.

**Sweepstakes**:  A sweepstakes run by Contest Promotions in which both (1) an entrant may enter a business at the premises on which a Contest Promotions sign is erected, or affixed to, and (2) the drawing or selection of sweepstakes winners is held at the same business.

## AGREEMENT

1.     **Classification of Signs**

The Parties agree and acknowledge that Category A Signs and Category B Signs erected by Contest Promotions within the City are and shall be deemed Business Signs for all purposes of the Planning Code, including but not limited to the filing, processing and approval of permits by and with the Planning Department, so long as they are consistent with the dimensional, locational, and other requirements applicable to Business Signs under Article 6 of the Planning Code.

2.     **Permit Requirements and Limitations**

(a)    _Permitting of Existing Inventory_.   Within two-hundred-and-seventy (270) days of the Operative Date, for each sign within the Existing Inventory, Contest Promotions shall (i) submit all documents and other materials with the Planning Department and any other departments of the City necessary to erect a Business Sign in compliance with the City's laws, (ii) pay all applicable permit application fees, and (iii) thereafter diligently seek the approval of such permit applications by the Planning Department.

(b)    For each permit application Contest Promotions shall submit all information required by Article 6 of the Planning Code, including but not limited to the following materials:

      i.    a scaled drawing of the proposed sign, including the location and dimensions of the proposed sign and any existing sign or signs on any building or other structure located at the relevant lot;

      ii.    color photographs of the façade or any building or other structure located on the relevant lot to which is affixed a sign;

      iii.    the proposed devices and/or inscriptions for the proposed sign, sufficient to demonstrate that the sign qualifies as a Business Sign; and

6

EXHIBIT A

iv.      the fee for a sign permit application published on the most recent Planning Department's Schedule of Application Fees, per Section 355(e) of the Planning Code, plus the then-applicable Board of Appeal surcharge.

(c)      The Planning Department shall not withhold the issuance of any sign permits sought by Contest Promotions so long as the Planning Department reasonably determines that the permit application and the sign to which it relates meet and satisfy the requirements of the Planning Code and this Settlement Agreement.

(d)      In the event that the Business where are sold, offered or conducted the businesses, commodities, services, industries or other activities which are depicted by a Category A Sign ceases operation permanently at the premises, Contest Promotions shall remove such Category A Sign within five (5) business days of such cessation.

(e)      In the event that the Business to which a Category B Sign directs the public ceases operation permanently at the premises, Contest Promotions shall remove such Category B Sign within five (5) business days of such cessation.

(f)      The Parties agree and acknowledge that the customary use of signs erected by Contest Promotions may involve frequent and periodic changes of copy within the meaning of Section 604(f) of the Planning Code.  If Contest Promotions proposes to erect signs that will have such frequent and periodic changes of copy, then each permit application for such signs shall indicate that the copy will change on frequent and periodic basis.

### 3.      **Compliance with Applicable Codes**

For each sign erected by Contest Promotions within the City, Contest Promotions shall comply with all applicable provisions of the city's Charter, ordinances, administrative bulletins, and other written regulations in effect at the time the permit for the subject sign is issued ("**Applicable Local Laws**") including, without limitation, applicable provisions of the Planning Code, the Building Code, the Electrical Code and the Public Works Code.

### 4.      **Placard Requirements for Category B Signs**

(a)      All Category B Signs erected by Contest Promotions in the City shall include a placard with a device or inscription directing members of the public to the Business where they may enter the Sweepstakes.  Such placards shall comply with the following requirements:

i.      the placard shall be at least six-inches (6") high and run the width of the entire sign;

ii.      the placard shall include only the name, address, and hours of operation of the Business where members of the public may enter the Sweepstakes, as well as arrows or other suitable devices indicating the location of the entrance to such Business; and

(b)      Notwithstanding the previous subsection (a), nor any other provision of this Settlement Agreement, Contest Promotions may include on any Category B

7

EXHIBIT A

Sign an inscription of the applicable rules and regulations for the Sweepstakes, as deemed necessary by Contest Promotions and its counsel to comply with all applicable laws.

5.   **Contest Requirements for Category B Signs**

    (a)   All Category B Business Signs erected by Contest Promotions in the City shall comply with the following requirements:

        i.   Contest Promotions shall award related prizes at the premises on which such Category B Sign is erected, or affixed to, no less frequently than once per calendar month ("**Sweepstakes Period**").

        ii.   Contest Promotions shall award at least one (1) related prize corresponding to each advertising campaign posted on such Category B Sign within the Sweepstakes Period.  For purposes of this provision, an advertising campaign related to a single business, commodity, service, industry or other activity shall be deemed to be a single advertising campaign regardless of the number of Category B signs posted at the premises where such signs are erected, or affixed.

        iii.   The total retail value of a related prize awarded in each Sweepstakes Period shall be no less than fifty dollars ($50).

6.   **Verification of Compliance of Category B Signs**

    (a)   Within ninety (90) days of the Operative Date, Contest Promotions shall create and establish a dedicated, private website (the "**Verification Website**") to be used exclusively by Contest Promotions and the Planning Department.  The website shall contain essential information concerning the Contests related to all Category B Signs erected by Contest Promotions within the City.  Such information shall comprise: (1) the name and address of each Business associated with the Sweepstakes; (2) the location of each sign at the relevant premises; (3) the dimensions of the sign; (4) a photograph of the copy of the sign, or in the case of signs that will have frequent and periodic changes of copy, of representative copy; (5) the date when the Sweepstakes began; (6) the category of the businesses, commodities, services, industries or other activities for which Related Prizes are offered in the Sweepstakes; (7) an identification of the Related Prize(s) to be awarded in connection with the Sweepstakes; and (8) the authorizing permit number for the particular sign.  The parties may meet and confer to modify the categories of information that Contest Promotions will provide in the Verification Website.  The City shall not require additional categories of information more frequently than once annually.

    (b)   Planning Department staff shall have constant access to the Verification Website, subject to routine downtimes due to technical outages and/or scheduled maintenance.

    (c)   Contest Promotions shall post to the Verification Website new photographs of sign copy (except in the case of signs that will have frequent and periodic change of copy) and update relevant Sweepstakes information within seventy-two (72) hours of a copy change.

00893354

EXHIBIT A

(d)     The Verification Website shall be available at a specified web address accessible only by Contest Promotions and Planning Department staff. The home page shall list each location, the name of the store and its address. Each location shall include a link to individual location pages. Location pages shall include additional detail not provided on the home page.

(e)     The City agrees to use best efforts to notify Contest Promotions promptly upon receipt of a Public Records Act Request or a Sunshine Request that calls for aggregate information contained in the Verification Website. For purposes of this subsection 6(e), aggregate information means information relating to two or more signs. This notice provision shall not apply if the City's response to a Public Records Act request or a Sunshine Request includes only information derived from separate public records independent of information contained in the Verification Website.

(f)     Contest Promotions shall pay an annual fee to the City of one hundred dollars ($100) per sign for each Category B Sign included in the Verification Website. This annual fee shall be due on July 1 each year. A late payment fee of 1% shall apply if the payment is not delivered by July 15, and an additional 1% late payment fee shall apply for any additional month or partial month that the annual payment is delinquent. This annual payment is intended to compensate the City for its costs to verify compliance of Contest Promotions' Category B signs, and is in lieu of a one-time payment for existing signs under Planning Code section 355(a)(1). The parties agree that the annual fee reasonably approximates the City's verification costs.

7.     **Dismissal of Lawsuit and Requests for Reconsideration.**

The Parties shall file a stipulation for dismissal of the Lawsuit in its entirety with prejudice, and Contest Promotions shall submit all documents necessary to withdraw any pending requests for reconsideration, within ten (10) days after Contest Promotions has delivered the payment set forth in Section 9 of this Settlement Agreement.

8.     **Mutual Releases.**  Effective upon the Operative Date, other than the rights and obligations of the Parties under this Settlement Agreement, Contest Promotions on the one hand and the City on the other hand, on behalf of themselves and their respective present and future affiliates, related entities, partners, employees, agents, representatives, attorneys, predecessors, successors and assigns (collectively, **"Related Persons"**), hereby irrevocably, unconditionally and fully release, forever discharge and covenant not to sue, each other and each other's respective Related Persons from and on account of any and all claims, demands, causes of action or charges of any nature whatsoever, known or unknown, suspected or unsuspected, including without limitation costs and fees of attorneys and experts, arising directly or indirectly from or related in any way to the Lawsuit, the NOVs, the ALJ Proceedings and the Order (collectively, **"Claims"**).

9.     **Costs and Fees.**  Subject to Paragraph 13 below, the Parties shall bear their own costs and attorneys' fees incurred prosecuting the Lawsuit or the preparation of this Settlement Agreement. Within five (5) days of the Operative Date, Contest Promotions shall pay the City $150,000. Starting thirty (30) days after the Operative Date, Contest Promotions shall

9

EXHIBIT A

begin making twenty-four (24) monthly payments of $9,375 to the City. Each monthly payment will be due on the last business day of each month.

All payments pursuant to this Settlement Agreement, including payments under this section 9 and section 6(f) of this Settlement Agreement, shall be made to the San Francisco Planning Department, 1650 Mission Street, 4th floor, San Francisco CA 94103-2479 Attn: Finance Division, Keith DeMartini.

10.     **Breach and Cure.**  In the event the City contends that Contest Promotions is in breach of any of its obligations under this Settlement Agreement, or that any sign erected by Contest Promotions is not in compliance with the terms of this Settlement Agreement or any applicable code, then the City shall give written notice (the "**Notice**") specifying in reasonable detail the alleged breach or lack of compliance. Contest Promotions shall be given a thirty (30) day period (the "**Cure Period**") from the date of receipt of the Notice in which to correct or cure the breach or lack of compliance. The City hereby agrees and acknowledges that with respect to violations of the Planning Code no Notices of Violation shall be issued and no action, lawsuit or administrative proceeding shall be commenced within the Cure Period.

11.     **Notices**.  Any notice, request, consent, waiver or other communication required or permitted hereunder shall be effective only if it is in writing and personally delivered or sent by certified or registered mail, postage prepaid, by nationally recognized overnight courier or by telecopier (with confirmation of delivery of telecopy), addressed as set forth below:

If to Contest Promotions:

**Contest Promotions, LLC**
c/o Saul Janson, Esq.
213 Rose Avenue, Suite B
Venice, CA 90291
Telecopy:        (310) 452-7978
E-Mail:          sacoja@aol.com

With copies to:

**Reuben, Junius & Rose, LLP**
One Bush Street, Suite 600
San Francisco, CA  94104
Attention:       James A. Reuben, Esq.
Telecopy:        (415) 567-9000
E-Mail:          jreuben@reubenlaw.com

10

EXHIBIT A

<u>If to the City</u>:

**San Francisco Planning Department**
c/o Daniel Sider
1650 Mission Street, Suite 400
San Francisco, CA 94103-2479
Fax:            (415) 558-6409
E-Mail:        dan.sider@sfgov.org

<u>With copies to</u>:

**San Francisco City Attorney's Office**
City Hall, Room 234
San Francisco, CA 94102
Attention:     James M. Emery
Telecopy:      (415) 554-4757
E-Mail:        jim.emery@sfgov.org

or such other person or address as the addressee may have specified in a notice duly given to the sender as provided herein. Such notice or communication shall be deemed to have been given as of the date received by the recipient thereof or the date of rejection of attempted delivery. All notices given hereunder shall also be given by electronic mail at the electronic mail addresses set forth above.

12.      **<u>Representations and Warranties.</u>**

       a.      Each Party represents and warrants to the other that neither he or she, nor any of his or her respective agents, representatives or attorneys nor any other person or entity, in order to induce any of the Parties to enter into this Settlement Agreement, have made any promise, assurance, representation, inducement or warranty whatsoever, whether express or implied or statutory, which is not specifically set forth in writing in this Settlement Agreement and further acknowledge that this Settlement Agreement has not been entered into in reliance upon any promise, assurance, representation, inducement or warranty not expressly set forth in writing in this Settlement Agreement.

       b.      Each Party represents and warrants to the other that he or she has read and understands this Settlement Agreement, and that this Settlement Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of the other Party hereto. The Parties hereby acknowledge that they have been represented or have had the opportunity to be represented in the negotiations and preparation of this Settlement Agreement by counsel of their own choice and that they are fully aware of the contents of this Settlement Agreement and of the legal effect of each and every provision herein.

       c.      Each Party represents and warrants to the other that the individual executing this Settlement Agreement on behalf of any Party has the authority to execute and thereby bind the Party for whom he/she executes this Settlement Agreement to the terms of this Settlement Agreement, and agrees to indemnify and hold harmless each other Party from any claim that such authority did not exist.

11

13.   **Enforcement of Settlement Agreement.**  If either Party to this Settlement Agreement brings an action or motion to enforce its rights hereunder, the prevailing Party shall be entitled to recover all costs and expenses, including all costs or expenses not otherwise recoverable under the Federal Rules of Civil Procedure or California Code of Civil Procedure and all attorneys' fees, incurred in connection with such action or motion.

14.   **Further Assurances.**  The Parties shall each execute any and all other documents and take any and all further steps which may be necessary or appropriate to further implement the terms of this Settlement Agreement.

15.   **Construction of Settlement Agreement.**  This Settlement Agreement shall be construed as a whole in accordance with its fair meaning and in accordance with the laws of the State of California.  The Parties stipulate and agree that this Settlement Agreement and the language used herein is the product of all Parties' efforts in consultation with their attorneys and other consultants, and each Party hereby irrevocably waives the benefit of any rule of contract construction which disfavors the drafter of an agreement.  The language of this Settlement Agreement shall not be construed for or against any particular Party.  The headings used herein are for reference only and shall not affect the construction of this Settlement Agreement.

16.   **Sole Agreement.**  Except as otherwise stated in this Settlement Agreement, this Settlement Agreement represents the sole and entire agreement between the Parties with respect to the subject matters covered hereby and supersedes all prior agreements, negotiations and discussions between the Parties hereto and/or their respective counsel with respect to the subject matters covered hereby.

17.   **Amendment to Settlement Agreement.**  Any amendment to this Settlement Agreement must be in a writing signed by duly authorized representatives of the Parties hereto and stating the intent of the Parties to amend this Settlement Agreement.

18.   **Counterparts.**  This Settlement Agreement may be executed in one or more counterparts, each of which shall be an original but all of which, together, shall be deemed to constitute a single document.  Facsimile and electronically scanned signatures shall be deemed to constitute original signatures.

*(The remainder of this page is left blank intentionally.*
*Signatures appear on the following page.)*

12

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the date(s) set forth hereinafter.

For Contest Promotions:

CONTEST PROMOTIONS, LLC, a California limited liability company

Date: ___JANUARY 7___, 2014

By: _____
Its: VP

For the City:

CITY AND COUNTY OF SAN FRANCISCO, a chartered city and county of the State of California

Date: _____, 2013

By:    John Rahaim
Its:    Planning Director

APPROVED AS TO FORM:
REUBEN, JUNIUS & ROSE

Date: January 13, 2014

By: _____
Counsel for Contest Promotions, LLC
James A. Reuben

APPROVED AS TO FORM:
DENNIS J. HERRERA
SAN FRANCISCO CITY ATTORNEY

Date: _____, 2013

By:    Thomas S. Lakritz
Deputy City Attorney

13

00893354

EXHIBIT A

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the date(s) set forth hereinafter.

For Contest Promotions:                 CONTEST PROMOTIONS, LLC, a California
                                        limited liability company


Date: _____, 2013              _____
                                        By:
                                        Its:



For the City:                           CITY AND COUNTY OF SAN FRANCISCO, a
                                        chartered city and county of the State of California


Date: __4 - 4__, 2013                   _____
                                        By:   John Rahaim
                                        Its:  Planning Director

                                        APPROVED AS TO FORM:
                                        REUBEN, JUNIUS & ROSE


Date: _____, 2013              _____
                                        By:    James A. Reuben
                                        Counsel for Contest Promotions, LLC

                                        APPROVED AS TO FORM:
                                        DENNIS J. HERRERA
                                        SAN FRANCISCO CITY ATTORNEY


Date: _____, 2013              _____
                                        By:    Thomas S. Lakritz
                                        Deputy City Attorney

00893354.doc                            EXHIBIT A

# EXHIBIT B

## Appendix 1 – Summary of Contest Promotions' Permit Applications

| BPA-Revision No. | Block/Lot | Add. | Street |
|---|---|---|---|
| 2014.08.28.4983 | 3788/014 | 689 | 03rd St |
| 2014.08.20.4232-R1 | 3704/026 | 65 | 06th St |
| 2014.08.13.3774 | 3755/137 | 397 | 08th St |
| 2014.08.05.3015-R1 | 3516/001 | 210 | 11th St |
| 2014.08.28.4990-R1 | 4149/001 | 2801 | 22nd St |
| 2014.08.28.4991-R1 | 4148/013A | 2950 | 23rd St |
| 2014.08.13.3778 | 4267/030 | 2847 | 24th St |
| 2014.08.13.3757-R1 | 4207/020 | 2944 | 24th St |
| 2014.08.28.4988 | 1639/046 | 449 | Balboa St |
| 2014.08.20.4249 | 2623/006 | 376 | Castro St |
| 2014.08.20.4250 | 0090/027 | 716 | Columbus Av |
| 2014.08.20.4251-R2 | 0065/013 | 900 | Columbus Av |
| 2014.08.20.4252 | 0065/012 | 930 | Columbus Av |
| 2014.08.07.3287-R1 | 1238/021 | 250 | Divisadero St |
| 2014.08.20.4248 | 0333/007 | 326 | Eddy St |
| 2014.08.13.3759 | 3753/145 | 917 | Folsom St |
| 2014.09.08.5735 | 3572/019 | 2011 | Folsom St |
| 2014.08.20.4254-R1 | 6521/040 | 2801 | Folsom St |
| 2014.09.08.5740-R1 | 6521/040 | 2801 | Folsom St |
| 2014.08.07.3286-R1 | 0344/005 | 172 | Golden Gate Av |
| 2014.08.28.4987-R1 | 0258/012 | 500 | Grant Ave |
| 2014.08.28.4989 | 0806/018 | 698 | Hayes St |
| 2014.08.13.3777-R1 | 1195/002D | 1900 | Hayes St |
| 2014.08.04.2952-R1 | 3516/001 | 1501 | Howard St |
| 2014.09.08.5739-R2 | 334/021 | 360 | Hyde St |
| 2014.08.07.3288-R1 | 0270/001 | 353 | Kearny St |
| 2014.08.07.3284 | 5414/028 | 2200 | Lane St |
| 2014.08.07.3285-R2 | 3503/003 | 1745 | Market St |
| 2014.08.13.3758 | 3701/021 | 1270 | Mission St |
| 2014.08.20.4253 | 3570/020 | 2097 | Mission St |
| 2014.08.13.3779-R1 | 6635/001 | 3300 | Mission St |
| 2014.08.13.3756-R2 | 5719/002 | 3729 | Mission St |
| 2014.08.07.3290-R2 | 6084/033 | 4701 | Mission St |
| 2014.08.07.3289-R1 | 1218/001 | 1101 | Oak St |
| 2014.08.20.4247-R1 | 3564/107 | 300 | Sanchez St |

1

**CERTIFICATE OF SERVICE**

2

3      I, TONYALYN HAWLEY, hereby certify that I electronically filed the following
document with the Clerk of the Court for the United States District Court, Northern District of
California by using the ME/ECF system on February 3, 2017.

4

5      **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF AND DAMAGES;**

6      I certify that all participants in the case are CM/ECF users and that service will be
accomplished by the CM/ECF system.

7

8      Executed February 3, 2017, at Los Angeles, California.

9      _____/s/  Tonyalyn Hawley_____
                  Tonyalyn Hawley

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28