1

2  UNITED STATES DISTRICT COURT

3  NORTHERN DISTRICT OF CALIFORNIA

4

5  CONTEST PROMOTIONS, LLC,                    Case No.  16-cv-06539-SI

6          Contest Promotions,

7      v.                                       **ORDER GRANTINGDEFENDANT'S
                                                MOTION TO DISMISS WITHOUT
8  CITY AND COUNTY OF SAN                       LEAVE TO AMEND**
   FRANCISCO,
9                                               Re: Dkt. No. 40
           The City.

10

11      On April 25, 2017, the Court held a hearing on the motion by defendant City and County

12  of San Francisco to dismiss plaintiff Contest Promotions' first amended complaint.  For the

13  reasons set forth below, the Court GRANTS the City's motion and DENIES leave to amend.

14

15                              **BACKGROUND**

16      This Court has presided over several disputes between plaintiff Contest Promotions LLC

17  ("Contest Promotions") and defendant City and County of San Francisco ("San Francisco" or "the

18  City") related to San Francisco's sign regulations.[1]  Beginning March 5, 2002, the City banned

19  construction of new "General Advertising Signs" but continued to allow the construction of new

20  "Business Signs."  In short, a "Business Sign" advertises a product or service available at the

21  adjoining business while a "General Advertising Sign" promotes a product or service that is

22  available off-site.  Contest Promotions' business model is to lease space on or near businesses to

23  install signs for various promotional giveaways, for which it presumably receives advertising

24  revenues.  In 2007, the City determined that even though an interested party must enter the store to

25  fill out an application for an advertised promotion, Contest Promotions' signs amount to "General

26

27      [1] Case Nos. 09-cv-04434 (closed Feb. 4, 2013), 15-cv-04365 (closed Mar. 17, 2016), 15-
    cv-00093 (closed July 28, 2015), *appeal docketed*, No. 15-16682 (9th Cir. Aug. 25, 2015), and 16-
28  cv-06539 (filed Nov. 10, 2016).

1 Advertising Signs" because the prize is not awarded on site. As a result, Contest Promotions'

2 signs were deemed to violate Article 6 of the S.F. Planning Code.

3      In response, Contest Promotions filed suit against the City on September 22, 2009,

4 challenging Article 6 on various constitutional grounds. The parties eventually settled the case on

5 February 1, 2013. As part of the settlement, the City agreed to recognize Contest Promotions'

6 signs as "business signs" subject to the condition that Contest Promotions apply for new sign

7 permits and that the signs comply with the S.F. Planning Code at the time each permit application

8 was filed. In July 2014, shortly after the agreement formally took effect, the City amended Article

9 6's definition of "Business Sign" as follows:

10         **Business Sign.** A sign which directs attention to ~~a~~ *the primary* business,
commodity, service, industry or other activity which is sold, offered, or conducted*,*
11         ~~other than incidentally~~, on the premises upon which such sign is located, or to
which it is affixed. Where a number of *businesses, services, industries, or other*
12         *activities are conducted on the premises, or a number of* commodities*,* ~~with~~
~~different brand names or symbols~~ are sold on the premises, up to 1/3 of the area of
13         a business sign, or 25 square feet of sign area, whichever is the lesser, may be
devoted to the advertising of one or more of those *businesses,* commodities*,*
14         *services, industries, or other activities* by brand name or symbol as an accessory
function of the business sign, provided that such advertising is integrated with the
15         remainder of the business sign, and provided also that any limits which may be
imposed by this Code on the area of individual signs and the area of all signs on the
16         property are not exceeded. *The primary business, commodity, service, industry, or*
*other activity on the premises shall mean the use which occupies the greatest area*
17         *on the premises upon which the business sign is located, or to which it is affixed.*

18 Under this amendment, no Contest Promotion sign qualifies as a business sign because the

19 giveaway that a Contest Promotion sign advertises is not the "primary" service a given business

20 offers. In response to the amendment, Contest Promotion filed a second action (the "January 2015

21 Action") that challenged, among other things, the constitutionality of the City's new definition of

22 "Business Sign."

23      Initially, the January 2015 Action only argued that Article 6 could not survive *Central*

24 *Hudson* scrutiny. In particular, Contest Promotions argued that the regulation "neither directly

25 advances the City's interests nor is it narrowly tailored to achieve its objectives." *Contest*

26 *Promotions, LLC v. City & Cnty. of S.F.*, No. 15-0093, Dkt. 17 at 15-17. The Court rejected this

27 argument and granted the City's first motion to dismiss, finding that Article 6 was appropriately

28 tailored to the City's interests of aesthetics and safety. *Id.*, Dkt. 25, at 6-8. On May 22, 2015,

Contest Promotions filed an amended complaint, and on June 12, 2014, the City moved to dismiss the complaint. *Id.*, Dkts. 29, 33. In between the filing of the amended complaint and the City's motion to dismiss, the U.S. Supreme Court decided *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015), a decision stressing that content-based distinctions are subject to strict scrutiny.

In light of *Reed*, Contest Promotions' opposition brief argued that Section 602.3, the section of Article 6 defining "business sign," is a content-based regulation and is thus subject to strict scrutiny. Specifically, Contest Promotions argued that because section 602.3 distinguishes between on-site and off-site signs, prohibiting signs that advertise a product or service offered off site while allowing signs that advertise a product or service located on site, section 602.3 should undergo strict scrutiny after *Reed*. The Court disagreed and dismissed Contest Promotions' First Amendment claim with prejudice. *Contest Promotions*, No. 15-0093, Dkt. 43. The Court distinguished *Reed* on the ground that it involved non-commercial speech, whereas Section 602.3 addressed commercial speech. *Id.* at 6 ("However, *Reed* does not concern commercial speech, and therefore does not disturb the framework which holds that commercial speech is subject only to intermediate scrutiny as defined by the *Central Hudson* test."). In addition, the Court found that the on-site/off-site distinction was not content based, but rather, was "fundamentally concerned with the location of the sign relative to the location of the product which it advertises." *Id.* at 7. Because Section 602.3 did not "single out specific subject matter [or specific speakers] for disfavored treatment," the Court held that section 602.3 was not subject to anything beyond *Central Hudson* scrutiny. *Id.* (citing *Reed*, 135 S. Ct. at 2230) (alterations original). Having already found in its first dismissal order that Section 602.3 satisfies *Central Hudson*, the Court dismissed with prejudice Contest Promotions' First Amendment claims. Contest Promotions appealed the order. According to the parties, the appeal is fully briefed but not yet scheduled for oral argument.[2] Mot. (Dkt. 40) at 5.

On August 27, 2015, Contest Promotion filed a number of state law claims in state court, alleging various breach of contract theories. It also alleged violation of the federal Contracts

_____

[2] At oral argument on April 25, 2017, the parties represented that the Ninth Circuit was considering setting oral argument between July 10-14, 2017.

Clause.  Based on the federal Contracts Clause claim, the City removed to this Court, and moved to dismiss.  *See Contest Promotions, LLC v. City & Cnty. of S.F.*, No. 15-4365 (filed Sept. 23, 2015).  The Court dismissed the federal Contract Clause claim on *res judicata* grounds, and remanded the remaining state law claims.  Those claims are currently being litigated in state court.

On November 10, 2016, the City amended Section 603 of the S.F. Planning Code to exempt all non-commercial speech.  Prior to the formal amendments, the City had long since interpreted the Code as exempting all non-commercial signs.  The November 10, 2016 amendment codified this interpretation, making explicit that "[n]othing in this Article 6 shall apply to any of the following signs: (a) Noncommercial signs."  That same day, Contest Promotions filed this lawsuit, which, among other things, challenges the changes to section 603 on First Amendment grounds.  Specifically, Contest Promotions argues that Article 6's provisions are "content-based because they exempt noncommercial signs."  Opp'n (Dkt. 41) at 5.  As a result, Contest Promotions argues that the provisions warrant strict or "heightened" scrutiny and that the provisions fail heightened, as well as intermediate, scrutiny.  On January 9, 2017, the Court's order denying Contest Promotion's motion for preliminary injunction in this case rejected these exact arguments.  In that order, the Court reviewed the case law and concluded that *Central Hudson* continues to govern.  Contest Promotions appealed the denial of the preliminary injunction to the Ninth Circuit.  Accordingly, two appeals related to the constitutionality of Article 6 of the SF Planning Code are currently pending before the Ninth Circuit.[3]

The City has now moved to dismiss the first amended complaint in this case with prejudice.  At oral argument, the parties agreed that a dismissal with prejudice would moot the appeal of the preliminary injunction order.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a

---

[3] At oral argument on April 25, 2017, counsel for defendant City represented that the Ninth Circuit was considering setting oral argument on the preliminary injunction appeal in July also.

Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires a plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether a plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I.     First Amendment

Contest Promotions argues that either "heightened" or strict scrutiny applies to Article 6's provisions. Contest Promotions began pressing this argument in the January 2015 Action. There, Contest Promotions' argued, relying entirely on *Reed v. Town of Gilbert*, that Planning Code Section 602.3 was subject to strict scrutiny because that Section distinguishes between on-site and off-site signs and is therefore content based. Contest Promotions now argues that the provisions of Article 6 are content based because they distinguish between commercial and non-commercial signs. Thus, in Contest Promotions' view, the provisions are subject to strict or heightened scrutiny.

The First Amendment provides that "Congress shall make no law . . . abridging the

1  freedom of speech." U.S. Const. I. This prohibition applies to states and local governments

2  through the Fourteenth Amendment. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015).

3  The First Amendment "accords less protection to commercial speech than to other constitutionally

4  safeguarded forms of expression." *Bolger v. Youngs Drugs Prods. Corp.*, 463 U.S. 60, 64 (1983)

5  (citing *Central Hudson Gas & Electric Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562-63

6  (1980)). Specifically, regulations of fully protected non-commercial speech are presumed

7  unconstitutional and are subject to strict scrutiny. In contrast, the Supreme Court has articulated

8  an intermediate standard of review for commercial speech regulations. *Central Hudson*, 447 U.S.

9  at 556.

10  Here, Contest Promotions argues that *Central Hudson* does not apply to Article 6 of the

11  S.F. Planning Code. As explained below, the Court disagrees and finds that *Central Hudson*

12  continues to provide the appropriate standard of review.

13

14  **A.    Level of Scrutiny**

15  Contest Promotions argues that Article 6 is subject to some form of heightened scrutiny.

16  Contest Promotions argues that under *Reed v. Town of Gilbert*, Article 6's provisions are subject

17  to strict scrutiny because they are content based. Opp'n (Dkt. No. 41) at 6-10. Alternatively,

18  Contest Promotions argues that Article 6's provisions are subject to "heightened scrutiny" under

19  *Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011) and *City of Cincinnati v. Discovery Network,*

20  *Inc.*, 507 U.S. 410 (1993), because the provisions impose content-based burdens on commercial

21  speech. Opp'n (Dkt. No. 41) at 10.

22  The Court's order denying Contest Promotions' motion for a preliminary injunction

23  considered and ultimately rejected these arguments. Dkt. 27 at 7-11. In that order, the Court

24  reviewed the case law and found that *Central Hudson* continues to apply. The Court concluded:

25  > In brief, a regulation that suppresses or burdens noncommercial speech based on its
   > content or the speaker must undergo strict scrutiny after *Reed*. Similarly, *Sorrell*
26  > dictates that a regulation that suppresses or burdens protected expression, based on
   > the speaker or content thereof, must undergo "heightened" scrutiny. *See Sorrell*,
27  > 564 U.S. 552. *Discovery Network* demonstrates that intermediate scrutiny is a
   > searching inquiry, and that courts should examine whether a regulation actually
28  > advances the government's interests. Contest Promotions may be correct that, after

6

> *Reed*, a restriction merely distinguishing between speech based on whether it is "commercial" or "noncommercial" is "content-based," even if it does not target a particular topic or speaker. However, it is not clear that such a generalized restriction on commercial speech need withstand anything more than *Central Hudson*'s intermediate scrutiny. *See Lone Star Security & Video, Inc. v. City of L.A.*, 827 F.3d 1192, 1198 n.3 (9th Cir. 2016) (dictum) ("But, although laws that restrict only commercial speech are content based, *see Reed III*, 135 S. Ct. at 2232, such restrictions need only withstand intermediate scrutiny. *See Central Hudson . . . .*"). Contest Promotions cites to no authority that a regulation burdening only commercial speech, without restricting a particular commercial speaker or subject, must undergo a higher level of scrutiny.

Dkt. No. 27 at 10.

The Court sees no reason to depart from this ruling. Accordingly, *Central Hudson* continues to provide the governing standard.

### B.    Application of Scrutiny

Under *Central Hudson*, the Court must determine whether: (1) the regulation seeks to further a substantial government interest; (2) the regulation directly advances the government's interest; and (3) the restriction reaches no further than necessary to accomplish the objective. *Central Hudson*, 447 U.S. at 563-66.

The Court disagrees with how Contest Promotions framed of the *Central Hudson* analysis. Contest Promotions argues that Article 6 fails the *Central Hudson* test because the provisions of Article 6 "exempt noncommercial signs." Opp'n (Dkt. No. 41) at 16. In other words, Contest Promotion presents the issue as whether a regulation that distinguishes between "commercial and non-commercial" signs can pass muster under *Central Hudson* when the regulation seeks to advance the government's interests of safety and aesthetics.

Article 6, however, does not make a broad distinction between commercial and non-commercial signs, prohibiting the former but allowing the latter. Rather, for the purpose of advancing the City's interests in safety and aesthetics, Article 6 distinguishes between on-site commercial signs and off-site commercials signs. In other words, Article 6 distinguishes between different forms of commercial speech. This makes Article distinguishable from the regulation in *Discovery Network*, which banned all commercial news racks while permitting all non-commercial news racks. In contrast, the City is not banning all forms of commercial speech; rather, the City is

striking a balance between allowing certain forms of commercial speech while prohibiting other forms that the City has determined are most inimical to safety and aesthetics. And as the Court has previously ruled, distinguishing between on-site commercial signs and off-site commercial signs satisfies *Central Hudson*:

> In *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 912 (9th Cir. 2009), the Ninth Circuit considered the constitutionality of a law that is substantially similar to Section 602.3. Citing *Metromedia* fifty-six times, the court upheld the law's constitutionality under the *Central Hudson* test. Section 602.3 is substantially similar to the law at issue in *Metro Lights*; the Court therefore finds that the same result must follow.

*Contest Promotions, LLC v. City & Cty. of San Francisco*, 100 F. Supp. 3d 835, 843–44 (N.D. Cal. 2015).

Article 6's provisions thus survive *Central Hudson* scrutiny. Accordingly, the Court dismisses Contest Promotions' first cause of action for violation of the First Amendment with prejudice.

## II.    *Ex Parte Young*

Contest Promotions argues that it is forced, in violation of due process, to risk substantial daily penalties while litigating this action. Contest Promotions seeks an injunction under *Ex Parte Young* to prevent the imposition of penalties under the Planning Code while it obtains a determination as to the code's validity.

A state cannot force a party to risk severe penalties to obtain a judicial determination if that determination involves a complicated or technical question of fact. *Ex Parte Young*, 209 U.S. at 145, 148. A statutory scheme that imposes penalties on those seeking judicial review is unconstitutional if "the penalties for disobedience are fines so enormous . . . as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation." *Id.* at 147. The right to judicial review "is merely nominal and illusory if the party to be affected can appeal to the courts only at the risk of having to pay penalties so great that it is better to yield to orders of uncertain legality rather than to ask for the protection of the law." *Wadley S. Ry. Co. v. Georgia*, 235 U.S. 651, 661 (1915).

The Court finds that the risks to Contest Promotions here are insufficient to justify relief under

*Ex Parte Young*.  As the City points out, Contest Promotions can apply for a permit and contest the denial of that permit on the same grounds, without incurring daily penalties.  Contest Promotions need not violate the Planning Code in order to challenge its constitutionality.  Moreover, years of ongoing litigation between the parties also demonstrate that Contest Promotions has not been deterred by "prohibitive penalties."

### III.    State Law Claims

Contest Promotions and the City agree that the Court should decline to exercise supplemental jurisdiction over the state law claims if the federal law claims are dismissed.  Opp'n (Dkt. No. 41) at 20 ("The City argues that if the court dismisses Contest's federal claims, it should decline to exercise supplemental jurisdiction over Contest's state-law claims pursuant to 28 U.S.C. § 1367(c).  Contest Agrees.").  Because Contest Promotions' federal law claims are dismissed with prejudice, the Court declines to exercise supplemental jurisdiction over Contest Promotions' state law claims.

## CONCLUSION

For the same reasons articulated in its Order on Plaintiff's Motion for Preliminary Injunction (Dkt. No. 27), the motion to dismiss the First Amended Complaint is GRANTED without leave to amend, and this Court declines to exercise supplemental jurisdiction over the state law claims.  If this order moots the pending appeal of the preliminary injunction order, the Court requests that, to the extent possible, the Ninth Circuit consider the appeal of this order along with the other currently pending appeal(s).

**IT IS SO ORDERED**.

Dated:   April 26, 2017

_____
SUSAN ILLSTON
United States District Judge